[L. A. No. 10489.  In Bank.—May 28, 1931.]

W. F. SLATER, Respondent, v. PACIFIC AMERICAN OIL COMPANY (a Corporation), Appellant.

Ben S. Hunter and James Farraher for Appellant.

Charles D. Swanner and R. Y. Williams for Respondent.

WASTE, C. J.—Defendant appeals from a judgment awarding damages to the plaintiff in the sum of $3,200 and enjoining it from thereafter allowing or permitting certain named injurious substances to be carried to or upon plaintiff's property. The appeal was originally taken to the District Court of Appeal, Fourth Appellate District, wherein a reversal of the judgment was had. In taking over the cause, we were satisfied, for the reasons stated in the opinion of the District Court of Appeal, that a reversal was necessary in so far as the judgment purports to award damages, but we were unable to agree with the conclusion that this necessarily required a reversal of the judgment enjoining defendant from allowing or permitting the continuance of the acts complained of. We therefore adopt as and for the decision of this court the following portion of the opinion prepared by Justice *pro tem.* Warmer:

"This is an appeal by the defendant Pacific American Oil Company from a judgment entered by the trial court in an action for damages. Respondent was the owner of 60 acres of valuable farm land near Huntington Beach, California. South of respondent's land and extending in a general easterly and westerly direction is a range of hills which slope to the north and extend to approximately the southern line of respondent's land. Originating on the northerly slope of said hills and extending therefrom in a general northerly direction and to the southerly line of respondent's land, there exists a ravine, which is a natural watercourse, and during the rainy season of each year the rain that falls upon the hills naturally drains and runs into said ravine and is conducted thereby to the southerly line of respondent's land, at which place the water flowing in said ravine naturally flows upon, over and across the respondent's land. There is a small ravine running down from said hills and adjoining the large ravine on appellant's property at about the point where the sump holes hereinafter mentioned were located. During the year 1927 appellant was operating oil wells upon said range of hills on which several other companies were also operating oil wells. At the foot of said ravine, and adjoining respondent's property, there were several sump holes that were filled with oil, from the wells of appellant and other companies operating wells on said range of hills. There was a storm in February, 1927, and the rainwater falling upon said hills during said storm naturally flowed down the range of hills and down said ravine, carrying oil, salt and other hydrocarbon substances from said ravine and sump holes over upon the respondent's property, where it was deposited, and the damage for which is herein sought to be recovered.

"The complaint alleges that plaintiff was damaged by the deposit on his land of oil and salt and hydrocarbon substances; that the defendant corporation negligently permitted same to run down the ravine and onto the lands of the plaintiff; and prays for an injunction and damages. The answer denies the allegations of the complaint as to damages and negligence and sets up a separate defense, alleging that the damages to plaintiff's land, if any were sustained, were due to the joint acts and omissions of cer-

tain other corporations, and that said companies had paid plaintiff in full for all of the damage sustained and said companies had been released from all claim or demand growing or arising out of the facts alleged in the complaint. Appellant urges that the evidence is insufficient to support the findings, making a number of specifications in this regard. The evidence shows there were about 30 oil wells draining into the ravine; that defendant company owned and operated two of such wells; that the oil that was in the ravine was an accumulation from all of the oil wells. The evidence does not disclose the quantity of the flow of oil, salt, or hydrocarbon substances from the wells of the defendant into the ravine that were washed down upon the plaintiff's lands. The evidence as to the flow of oil, salt and hydrocarbon substances from the appellant's wells and sumps on the occasion complained of in this action is not from the testimony of eye-witnesses who saw the same drained into the ravine or the sumps overflowing, but is from the testimony of witnesses who testified to seeing evidences of overflow from the defendant's sumps shortly subsequent to the storm that caused the oil, salt and hydrocarbon substances to be washed down on the plaintiff's property, and while not very clear and convincing, yet there is some evidence of the fact that some of said substances reached the ravine from the sumps of the defendant company. ▮ The respondent admits that the defendant is only one of the number of contributors to the flow that caused the damage, but maintains that the defendant was a separate tort-feasor. ▮ This position of the respondent is not directly challenged by the appellant, nor could it be successfully, for, as said in *Miller* v. *Highland Ditch Co.*, 87 Cal. 430 [22 Am. St. Rep. 254, 25 Pac. 550] : 'It is clear that the rule as established by the general authorities is, that an action at law for damages cannot be maintained against several defendants jointly, when each acted independently of the others, and there was no concert or unity of design between them. It is held that in such case the tort of each defendant was several when committed, and that it does not become joint because afterwards its consequences united with the consequences of several other torts committed by other persons.'

"The record discloses that plaintiff's land was damaged by a deposit thereon of oil, salt and hydrocarbon substances; that the total volume of the oil, salt and hydrocarbon substances that caused said damage came from several independent sources.

"There is no evidence as to the total quantity of oil, salt and hydrocarbon substances that caused the damage or as to the quantity that defendant contributed to the total volume. Neither is there any evidence as to the percentage that the defendant's contributions bore to the whole.

"Stating it in another way, plaintiff's land was injured by a deposit thereon of oil, salt and hydrocarbon substances that came from a ravine, along the banks of which were 30 wells that contributed in some degree, more or less, to the full quantity of the injurious substances so deposited on the plaintiff's lands. Plaintiff proved the injury to his lands caused by said injurious deposits, but offered no evidence to prove the percentage of contribution by the defendant. However, the court finds that for its separate tort the defendant caused damage to the plaintiff in the sum of $3,200, and granted an injunction. Defendant contends that without evidence as to the proportion of contribution by the defendant, or evidence from which the proportion of the contribution of the defendant could be computed, the evidence is insufficient to sustain the finding. Respondent relies upon the cases of *California Orange Co. v. Riverside Portland Cement Co.*, 50 Cal. App. 522 [195 Pac. 694, 695], as authority for the court to make such a finding. In that case the orange orchard was located on a piece of high bench land situated on the northerly bank of the Santa Ana river in Riverside County, about midway between the defendant's cement mill and the cement mills of the California Portland Cement Company. There was no question but that cement in considerable quantities from the mills of the California Portland Cement Company, as well as from the defendant's mill, settled upon the plaintiff's orange trees, coating the leaves with white ash and dust which incrusted from the action of dew and moisture, so that it neither could be washed off by the rains, nor blown off by the winds, but remained on the leaves for the period of their life, that is, for two or three years. The

court said, in determining the amount of damages that should be assessed against this defendant:

"'The trial court was at liberty to estimate as best it could, from the evidence before it, how much of the total damage, caused by the operations of the two cement companies, was occasioned by defendant's plant, and, in doing so, might measure with a liberal hand the amount of damage caused by the defendant's mill. (Citing cases.) Though in cases of this sort entire accuracy is impossible, and the difficulty of accurately proportioning and assessing the damage done by defendant's mill is great, still that difficulty would have been avoided had defendant but taken care that no occasion should arise requiring such proportioning and assessing of the whole damages.'

"The court particularly points out that there was no question raised by the appellant cement company in that case, that it was charged with more than its total proportion of damages caused by the plants of the two companies. This point was not raised. In that case the evidence showed an estimate of the quantity of the cement dust attributable by the several contributors to the deposit of cement dust on the plaintiff's land, and in addition thereto, there is direct testimony as to the contribution to the whole. Applying the rule stated in *California Orange Co.* v. *Riverside Portland Cement Co., supra*, it would appear that the exact contribution as between several tort-feasors, may be difficult of exact admeasurement, and a court may exercise a liberal hand in arriving at a judgment in the matter; yet the court must arrive at the judgment from the evidence before it. The defendant is liable only for such portion of the total damage resulting from the commingled oil, salt and hydrocarbon substances, which its contribution to the whole bore to the injury. (*Miller* v. *Highland Ditch Co., supra.*)

"Assuming that the total amount of oil, salt and hydrocarbon substances deposited upon the plaintiff's land had been by actual measurement 100 barrels, that the defendant made some contribution thereto, and that the total injury done was $10,000. Could it be said that a court, without any knowledge whatsoever as to the contribution by the defendant, and upon the statement alone that there was some contribution, could apportion the damages as between the several wrongdoers? We think not.

"There being no evidence in the record upon which the court could make any finding as to the quantity of oil that came from the appellant's sumps and wells through the ravine and finally was deposited upon the plaintiff's land to [his] injury, and there being no evidence in the record to show the proportionate contribution of the defendant to the whole of the injurious substances so deposited on the plaintiff's land, there is no evidence to support the finding that the injury caused by the defendant's contribution was in the sum of $3,200. . . ."

It is only fair, in actions of this character, that the plaintiff be required to produce some evidence from which defendant's proportionate liability might reasonably be deduced. In *Watson* v. *Colusa-Parrot M. & S. Co.*, 31 Mont. 513, 517 [79 Pac. 14, 15], it is declared: "Under the following authorities the defendant was liable to plaintiffs for whatever damage it caused by its own wrongful acts, and none other. . . . Defendant could not be held to respond in damages for the entire injury occasioned to plaintiffs by the nuisance complained of, because confessedly it only contributed to this injury. The full damage, therefore, must be apportioned among all the wrongdoers. The mere fact that it is difficult to determine what part of the damage was occasioned by acts of the defendant is no objection to the relief asked. . . . The supreme court of Connecticut, in *Sellick* v. *Hall,* [47 Conn. 260], uses the following very pertinent language: 'It may be very difficult for a jury to determine just how much damage the defendant is liable for and how much should be left for the city to answer for; but this is no more difficult of ascertainment than many questions which juries are called upon to decide. They must use their best judgment, and make their result, if not an absolutely accurate one, an approximation to accuracy. And this is the best that human tribunals can do in many cases. If the plaintiff is entitled to damages and the defendant liable for them, the one is not to be denied all damages, nor the other loaded with damages to which he is not legally liable, simply because the exact ascertainment of the proper amount is a matter of practical difficulty.'

"Like all other cases for the recovery of damages in actions upon torts, a jury must be trusted to arrive at a

fair estimate of the damages after a full consideration of all the evidence which may be introduced upon the subject. *However, competent evidence must be produced of all facts necessary to a recovery, upon which the jury can base a reasonably reliable conclusion; nothing can be left to mere conjecture."* (Italics ours.)

While fully appreciating the difficulty surrounding the production of evidence tending to establish the defendant's contribution to the wrong suffered by plaintiff, we are not prepared to conclude that it is utterly impossible to offer some evidence upon which defendant's proportionate liability might fairly be determined. ▆ However indefinite the evidence may be as a standard for the measurement of damages, our examination of the record satisfies us that plaintiff sufficiently established that some portion of the oil, salt and other hydrocarbon substances causing the injury to his land had come from the operation of the defendant's wells. This showing is sufficient to warrant the granting of injunctive relief. In this connection, the trial court found, in part, "That the continuance of the carelessness, negligence and wrongful acts of the Defendant as alleged in the complaint will cause a multiplicity of judicial proceedings; that the amount of compensation which will afford Plaintiff adequate relief if said acts and conduct on the part of Defendant are allowed to continue will be extremely difficult to ascertain, and the continuance of the carelessness, negligence and wrongful acts of the Defendant as alleged in the complaint will cause great and irreparable injury to Plaintiff's land and pecuniary compensation will not afford Plaintiff adequate relief." It is settled that a trespass of a continuing nature, the constant recurrence of which renders the remedy at law inadequate, unless by a multiplicity of suits, affords sufficient ground for relief by way of injunction. (*United Railroads* v. *Superior Court*, 172 Cal. 80, 84 [155 Pac. 463, 464]; *Parker* v. *Larsen*, 86 Cal. 236 [21 Am. St. Rep. 30, 24 Pac. 989].)

▆ We find no error in the trial court's ruling excluding evidence of compensation received by plaintiff from other operators. As already stated, each of these several offenders is individually and separately liable for his proportionate share of the damage done to plaintiff's property,

and payments made by anyone of them in discharge of his individual liability can have no possible bearing or effect on the responsibility of the others.

What has been said makes it unnecessary to consider other contentions raised by the appellant.

For the foregoing reasons that portion of the judgment awarding damages to the plaintiff is reversed, while that portion enjoining the defendant from allowing or permitting the continuance of the acts complained of is affirmed.

Seawell, J., Richards, J., Shenk, J., Langdon, J., and Curtis, J., concurred.