## PERMANENTE METALS CORPORATION v. PISTA et al.

### No. 11019.

Circuit Court of Appeals, Ninth Circuit.
March 29, 1946.

Thelen, Marrin, Johnson & Bridges, Thomas K. McCarthy, and Courtney L. Moore, all of San Francisco, Cal., for appellant.

J. T. Harrington and Bardin & Harrington, all of Salinas, Cal., and George M. Naus, of San Francisco, Cal., for appellees.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal from a judgment awarding damages for injury to a fruit crop.

Appellant operates a plant in the Salinas Valley, California, where dolomite ore is calcined. Located within a distance of a mile from the plant is appellees' apricot orchard. In 1943, during the blossoming or pollination period of the fruit, dust discharged from the stacks of appellant's plant settled over the surrounding terrain within a radius of approximately three miles from the plant. Appellees sought damages on the ground that the dustfall interfered with the pollination of the fruit, thereby causing or contributing to the shortness of the ensuing crop. The trial court found that as a proximate result of the dustfall the yield of the orchard was 133 tons less of apricots than it otherwise would have been.

Appellant insisted and still argues here that the damage to the crop was caused solely by poor weather conditions, it being a conceded fact that bad weather prevailing in California during the pollination season in 1943 contributed everywhere to the production of an unusually short apricot crop. There was, however, a very substantial showing that the dust from appellant's plant contained elements injurious to the apricot blossoms. Several witnesses testified directly to the injury from this source, and while their testimony is assailed we are satisfied of its competency and sufficiency.

An error extensively argued by appellant is the overruling of an objection to a hypothetical question put to a horticulturist who testified for the complainants. The question called for the opinion of this expert as to the tonnage of fruit that would have been produced had not the dolomite dust fallen upon the trees. The objection urged is that the question did not include a recital of all the material facts in that it contained no reference to the unfavorable weather. If it be assumed that the question was faulty in this respect, the error would appear to have been cured by the manner in which the answer was given. The witness expressly stated that in making his estimate he took into consideration the general conditions existing in 1943 which he described as a low-crop year. Moreover, it has been held in California, as elsewhere, that where a witness answers a hypothetical question not founded on all the facts of the case, the defect goes not to the competency of the evidence but merely affects its weight. Cf. Kershaw v. Tilbury, 214 Cal. 679, 691, 8 P.2d 109. The fairness of a hypothetical question is largely a matter resting in the discretion of the trial court.

United States v. Aspinwall, 9 Cir., 96 F.2d 867; cf. II Wigmore on Evidence, 3d ed. § 682. Here the case was tried to the court rather than to a jury, and it is plain that the judge was in no way misled or confused by the query complained of. There was, besides, other evidence tending to throw light on the quantum of loss.

 Appellant's underlying contention is that the record affords no basis other than surmise or conjecture for the court's determination of the amount of damage caused by the dustfall as distinguished from that attributable to the weather. We are not able to agree. Aside from evidence on the subject already mentioned, substantial support for the award is to be found in a comparison made by an admittedly qualified witness between the crop produced on appellees' orchard and that produced on a nearby orchard lying outside the dust zone, but otherwise similarly circumstanced in all material respects and subject to the same natural causes and elements. In the case of the latter orchard, unaffected by the dust, the crop was shown to be about 60 per cent of normal whereas the yield on appellees' orchard was not more than 10 per cent of normal.[1] It was upon this comparison that the trial court appears most heavily to have relied.

Decision in the cognate case of California Orange Co. v. Riverside Portland Cement Co., 50 Cal.App. 522, 195 P. 694, 697, turned upon a like comparison.[2] It was there shown by the defendant that during the period of the operation of its cement plant the plaintiff's orange grove was subject to natural causes of injury, such as killing frosts and high northerly winds. The court said that if it is impossible to distinguish between the damage arising from injury attributable to the defendant and damage which has another origin, the trier of the facts should be left to make from the evidence the best possible estimate. The court pointed to evidence showing "that plaintiff's grove, though not subject to any greater damage from the elements than other groves situated outside the zone of falling cement dust, did not produce as did the groves similarly situated outside the dust zone." The showing was thought sufficient to support the award of damages against the defendant. For a similar holding see International Agr. Corp. v. Abercrombie, 184 Ala. 244, 63 So. 549, 49 L.R.A.,N.S., 415.

 In cases like the present an exact admeasurement of the quantum of damage attributable to the wrong-doer is, of course, impossible. But as observed in Learned v. Castle, 78 Cal. 454, 461, 18 P. 872, 21 P. 11, 13, "a wrong-doer who contributes to a damage cannot escape entirely because his proportional contribution to the result cannot be accurately measured." The principle finds similar expression in Hanlon Drydock, etc., Co. v. Southern Pacific Co., 92 Cal.App. 230, 268 P. 385.

We find no reversible error in the record, and the judgment is therefore affirmed.

---

[1] There was evidence that the production of apricots in 1943 in Monterey County was 55-percent of the average production in preceding years, and that the statewide averages in that year was 42-percent.

[2] That case was cited with approval by the Supreme Court in Slater v. Pacific American Oil Co., 1931, 212 Cal. 648, 300 P. 31.