[Civ. No. 8022. Third District. Mar. 7, 1952.]

MYRTLE GRIFFITH, Plaintiff and Appellant, v. THOMAS J. KERRIGAN et al., Defendants and Appellants.

Arthur William Coats, Jr., and Hugh M. Ferrier for Plaintiff and Appellant.

Rich, Carlin & Fuidge for Defendants and Appellants.

VAN DYKE, J.—Plaintiff brought this action against defendants, Kerrigan and wife and Sutter Butte Canal Company, to recover damages for injury to his peach orchard caused by excessive underground water seepage from adjoining lands which were controlled and operated by the defendants. The demurrer of the Sutter Butte Canal Company was sustained without leave to amend. Judgment was entered in favor of plaintiffs against the Kerrigans for the amount of damage found by the court to have been caused by them. Both the plaintiff and the Kerrigans have appealed from the judgment thus entered.

The injuries to plaintiff's orchard occurred in 1946. The defendants operated a 90-acre tract which adjoined plaintiff's property on the west. In 1946 defendants planted rice in this acreage. The main canal of the Sutter Butte Canal Company runs east and west approximately one eighth of a mile north of plaintiff's north boundary. A lateral canal runs north and south along the east boundary of plaintiff's property. These canals had been in operation since 1921. In 1946 water seepage from these canals and from irrigation in defendants' rice fields resulted in a rise of the water table beneath plaintiff's orchard to within 12 to 15 inches of the surface. The raised water table caused sour-sapping of the tree roots, injuring the peach crop of that year, and the trees. In prior years injury had not been caused as a result of seepage from the canals, and in 1946 the seepage from this source was no greater than in previous years. It is thus apparent that the seepage from defendants' rice fields combined with the seepage from the canals to produce the injury to plaintiff. In addition to these main sources, the court found that plaintiff's own irrigation, rightfully and carefully done, and leakage from an irrigation ditch along the south boundary of plaintiff's property, contributed to the raising of the water table.

The trial court adopted findings as to the amount of water contributed to the natural underground water from each of these sources as follows: Seepage from the Sutter Butte canals, one half; seepage from defendants' land, one third; seepage from other sources, one sixth. The court found that

the total loss to plaintiff was $3,178.78. As a conclusion of law, the defendants were assessed one third of the total damage.

The plaintiff contends that defendants' wrongful act proximately caused the entire damage, and she was therefore entitled to a judgment against them for the entire amount. The court's findings on the amount of water seeping from the canals is not disputed by the plaintiff. However, plaintiff reasons that since the seepage from the canals had occurred in prior years without causing damage, the sole proximate cause of damage during 1946 was the seepage from defendants' rice fields. In other words, it is plaintiff's view that the damage to the orchard would not have occurred *but for* the wrongful act of defendants Kerrigan.

The facts of this case do not present a problem of causation. It is true, as plaintiff points out, that damage would not have occurred *but for* the seepage from defendants' rice fields. It is also true that the damage would not have occurred *but for* the seepage from the Sutter Butte Company's canals. The question is whether defendants are responsible for the entire loss.

The factual situation here required an apportionment of the damages. The rule applicable is stated in section 881 of Restatement of the Law of Torts, as follows:

"Where two or more persons, each acting independently, create or maintain a situation which is a tortious invasion of a landowner's interest in the use and enjoyment of land by interfering with his quiet, light, air or flowing water, each is liable only for such proportion of the harm caused to the land or of the loss of enjoyment of it by the owner as his contribution to the harm bears to the total harm."

This rule was followed in *California Orange Co.* v. *Riverside Portland Cement Co.*, 50 Cal.App. 522 [195 P. 694]. In that case the plaintiff sought damages for injuries to an orange orchard caused by cement dust from defendant's cement mill. The orchard was situated between defendant's mill and the mills of another cement company. Cement dust in considerable quantities from the other mills, as well as dust from defendant's mill, settled upon the orange trees, causing serious damage. The court stated at page 524:

"The California Portland Cement Company and defendant were not joint tort-feasors. Their respective torts— wrongfully operating their respective cement plants in such manner that deposits of cement dust, blown from the plants

toward plaintiff's orange grove, were incrusted upon the leaves of plaintiff's trees—were several when committed, and did not become joint merely because of a commingling of the dust from the respective plants and a union of the consequences proceeding from the several and independent tortious acts. (*Miller* v. *Highland Ditch Co.*, 87 Cal. 430 [215 P. 550, 22 Am.St.Rep. 254]; *William Tackaberry Co.* v. *Sioux City etc. Co.*, 154 Iowa 358 [132 N.W. 945, 134 N.W. 1064, Ann.Cas. 1914A 1276, 40 L.R.A.N.S. 102]; Sutherland on Damages, 4th ed., sec. 1059.) Defendant is liable for only such proportion of the total damage resulting from the commingled dust emitted into the atmosphere from the plants of the two cement companies as was caused by its own plant. (*Miller* v. *Highland Ditch Co., supra.*)'' See, also, *Slater* v. *Pacific American Oil Co.*, 212 Cal. 648, 653 [300 P. 31]; *Summers* v. *Tice*, 33 Cal.2d 80, 85 [199 P.2d 1, 5 A.L.R.2d 91]; *City of Oakland* v. *Pacific Gas & Elec. Co.*, 47 Cal.App.2d 444, 449 [118 P.2d 328]. Plaintiff's contentions cannot therefore be sustained.

The defendants have appealed from the judgment entered against them. It is contended by them that it was impossible for the trial court to ascertain the amount of damage attributable to the defendants. An expert witness for defendants testified that it was impossible to establish with mathematical exactitude the amount of water which each of the various sources contributed to the underground water. However, this witness estimated that one half was attributable to seepage from the canals and one third was attributable to seepage from defendants' rice fields. The trial court adopted this estimate in apportioning the damage. The witness stated that his estimate was largely guesswork, but was the best he could do, and was based on a consideration of comparative area, comparative head, and other physical factors.

Such evidence furnished a sufficient basis for an apportionment of the damage. In *California Orange Co.* v. *Riverside Portland Cement Co., supra,* the court stated, at pages 524-525:

''In determining the amount of damages that should be assessed against this defendant, the trial court was at liberty to estimate as best it could, from the evidence before it, how much of the total damage, caused by the operations of the two cement companies, was occasioned by defendant's plant, and, in doing so, might measure with a liberal hand the amount of damage caused by defendant's mill. (*Learned* v. *Castle*, 78 Cal. 454 [18 P. 872, 21 P. 11]; *Jenkins* v. *Penn-*

*sylvania R. Co.,* 67 N.J.L. 331 [51 A. 704, 57 L.R.A. 309] ; *City of Mansfield* v. *Bristor,* 76 Ohio St. 270, 285 [81 N.E. 631, 118 Am.St.Rep. 860, 10 Ann.Cas. 767, 10 L.R.A.N.S. 806].) Though in cases of this sort entire accuracy is impossible, and the difficulty of accurately proportioning and assessing the damage done by defendant's mill is great, still that difficulty would have been avoided had defendant but taken care that no occasion should arise requiring such proportioning and assessing of the whole damages.''

Certain cases, notably *Slater* v. *Pacific American Oil Co., supra,* have stressed the difficulty of proving the amount of damage attributable to various sources. Recovery of damages was denied in the Slater case upon the ground that there was no evidence of the amount which the defendant contributed to the total volume. Recent cases treating of the difficulties in apportioning damages in comparable situations are pertinent. In *Summers* v. *Tice, supra,* the court stated at page 88 :

"If defendants are independent tort feasors and thus each liable for the damage caused by him alone, and, at least, where the matter of apportionment is incapable of proof, the innocent wronged party should not be deprived of his right to redress. The wrongdoers should be left to work out between themselves any apportionment. (See *Colonial Ins. Co.* v. *Industrial Acc. Com.,* 29 Cal.2d 79 [172 P.2d 884].) Some of the cited cases refer to the difficulty of apportioning the burden of damages between the independent tort feasors, and say that where factually a correct division cannot be made, the trier of fact may make it the best it can, which would be more or less a guess, stressing the factor that the wrongdoers are not in a position to complain of uncertainty. (*California O. Co.* v. *Riverside P. C. Co., supra.*)'' See, also, *Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409, 434 [218 P.2d 17].

The judgment is affirmed, each party to pay costs incurred by such party, except that as to the cost of clerk's and reporter's transcripts on appeal each party shall bear half.

Adams, P. J., and Peek, J., concurred.