[Civ. No. 18259. Fourth Dist., Div. One. May 11, 1979.]

COMMERCIAL STANDARD TITLE COMPANY, INC., et al.,
Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY,
Respondent;
TODD SMITH, Real Party in Interest.

**COUNSEL**

Atwood & Hurst, Stanford H. Atwood, Jr., and Frank E. Mayo for Petitioners.

No appearance for Respondent.

Holt, Rhoades & Hollywood, Rhoades & Hollywood, Douglas R. Reynolds, David J. Danielsen and John S. Rhoades for Real Party in Interest.

## OPINION

**STANIFORTH, J.**—Petitioners Commercial Standard Title Company, Inc., and First California Title Company of San Diego (the Title Companies) seek a writ of mandate directing the court below to allow them to file a cross-complaint for partial indemnity against Todd Smith, an attorney at law, in an action wherein the Title Companies, inter alia, are defendants and W. L. Lipscomb Engineering, Inc. (Lipscomb), Smith's former client, is plaintiff. Lipscomb's action seeks damages from the Title Companies for "fraudulently or negligently" preparing and issuing an incorrect "lot book" guaranty which Lipscomb relied upon to its damage. Lipscomb charges the lot book guaranty omitted a $750,000 trust deed of which the Title Companies had knowledge. Attorney Smith represented Lipscomb in the property exchange transactions wherein Lipscomb was given the defective lot book guaranty. The Title Companies, by their proposed cross-complaint, seek "indemnification" from Smith under principles announced in *American Motorcycle Assn.* v. *Superior Court* (20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]) (*AMA*).

The trial court sustained Smith's general demurrer to the Title Companies' amended cross-complaint. This mandamus proceeding followed. This court has stayed the trial in the underlying action and directed Smith to show cause why the relief prayed for should not be granted.

### FACTS

The Title Companies allege (and we accept these allegations as true for the purposes of these proceedings) Attorney Smith represented Lipscomb in connection with the negotiations and consummation of a land exchange transaction between Lipscomb and Saratoga Development Corporation (Saratoga). An agreement was reached whereby Lipscomb would convey 9.3 acres (Quest parcel) to Saratoga and Saratoga would convey 9.3 acres (Scripps-Mesa parcel) to Lipscomb. Escrow instructions were prepared and submitted to Louisville Title Insurance Co. Saratoga's agent represented to Attorney Smith that the Scripps-Mesa parcel was free and clear of all encumbrances and that the Title Companies had prepared a title report so indicating that pristine status. A representative of Saratoga delivered a "lot book" guaranty to Attorney Smith issued by the Title Companies and dated the morning the escrow was to close on the exchange of parcels.

The properties were exchanged without an escrow. Lipscomb received a parcel of property subject to a $750,000 trust deed for which it had not bargained.

The Title Companies charge Smith with negligently advising Lipscomb to proceed with the exchange of properties without first obtaining a policy of title insurance and in relying upon the representations of the Saratoga agent and the lot book guaranty. The lot book guaranty protection was limited to $100.

In sum the Title Companies would charge their current opponent's former lawyer with legal malpractice in connection with the transaction, subject of the underlying lawsuit, and seek indemnification under *AMA* principles in proportion to the lawyer's fault, for any judgment obtained by Lipscomb against the Title Companies.

DISCUSSION

I

It was with "extreme reluctance" that this court stayed the proceeding below and authorized the use of the prerogative writ to review a ruling on pleadings. "However, upon occasion our attention is drawn to instances of such grave nature or of such significant legal impact that we feel compelled to intervene through the issuance of an extraordinary writ." (*Babb* v. *Superior Court,* 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].) Such a case is here. We are called upon to consider the effect of the rules announced in *AMA* upon the court's denying a cross-complaint for comparative indemnity. Considering the novelty of the fact setting, the absolute lack of precedent, the number of cases to which it could apply, and the need to give the superior court guidance at the earliest possible time, we deemed the issue of sufficient legal impact to justify granting of the order to show cause.

II

*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, is the claimed basis for a cause of action against Attorney Smith. We examine it with care. *AMA* involved an action for personal injuries brought against the sponsor of a motorcycle race by a youthful participant in the race. The sponsor (*AMA*) cross-complained for partial

indemnity against the boy's parents, charging their negligent supervision was a concurrent cause of the boy's injuries.

After concluding "that a concurrent tortfeasor enjoys a common law right to obtain partial indemnification from other concurrent tortfeasors on a comparative fault basis," the Supreme Court found that the governing provisions of the Code of Civil Procedure section 428.10 et seq. clearly authorize the sponsor to seek indemnification from a previously unnamed party through such a cross-complaint. (*AMA, supra,* at pp. 604-605.) The Supreme Court, accordingly, held the trial court's decision to deny defendant leave to file its pleading to be in error.

In adopting the principle of partial indemnity between concurrent tortfeasors on a comparative fault basis, the Supreme Court modified the harsh all-or-nothing common law doctrine. This new doctrine followed upon, conformed to the objectives of *Li* v. *Yellow Cab Co.,* 13 Cal.3d 804, 813 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], establishing "a system, under which liability for damage will be borne by those whose negligence caused it in direct proportion to their respective fault." (*Id.,* at p. 813.) Prior to *Li,* a negligent tortfeasor's liability was ignored by the "draconian contributory negligence doctrine." (*AMA, supra,* at p. 587.) *Li* examined and abandoned the "timeworn" contributory negligence rule. The Supreme Court in *AMA* stated:

"[T]he force of *Li*'s rationale applies equally to the allocation of responsibility between two or more negligent defendants and requires a modification of this state's traditional all-or-nothing common law equitable indemnity doctrine. Again, we concur with Dean Prosser's observation in a related context that '[t]here is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were . . . unintentionally responsible, to be shouldered onto one alone, . . . while the latter goes scot free.' [Citation.] From the crude all-or-nothing rule of traditional indemnity doctrine, and the similarly inflexible per capita division of the narrowly circumscribed contribution statute, we have progressed to the more refined stage of permitting the jury to apportion liability in accordance with the tortfeasors' comparative fault.

"Accordingly, we hold that under the common law equitable indemnity doctrine a concurrent tortfeasor may obtain partial indemnity from cotortfeasors on a comparative fault basis." (*AMA, supra,* at pp. 607-608.)

## III

■ *AMA,* however, does not purport to make a rule for all seasons. It applies only to "appropriate" cases. The precise language of *AMA* is: "The long-recognized common law equitable indemnity doctrine should be modified to permit, in appropriate cases, a right of partial indemnity, under which liability among multiple tortfeasors may be apportioned on a comparative negligence basis." *(AMA, supra,* at p. 583.) And while concluding "that under the governing statutory provisions a defendant is generally authorized to file a cross-complaint against a concurrent tortfeasor for partial indemnity on a comparative fault basis, even when such concurrent tortfeasor has not been named a defendant in the original complaint" *(AMA, supra,* at p. 607), a footnote points out:

"There are, of course, a number of significant exceptions to this general rule. For example, when an employee is injured in the scope of his employment, Labor Code section 3864 would normally preclude a third party tortfeasor from obtaining indemnification from the employer, even if the employer's negligence was a concurrent cause of the injury. [Citations.]

"Similarly, as we have noted above such a partial indemnification claim cannot properly be brought against a concurrent tortfeasor who has entered a good faith settlement with the plaintiff, because permitting such a cross-complaint would obviously undermine the explicit statutory policy to encourage settlements reflected by the provisions of section 877 of the Code of Civil Procedure. . . ." *(AMA, supra,* at p. 607, fn. 9.)

And in *Rodriguez* v. *McDonnell Douglas Corp.,* 87 Cal.App.3d 626, 676 [151 Cal.Rptr. 399], the appeal court set forth yet another variant: "In adopting a principle of partial indemnity between concurrent tortfeasors on a comparative fault basis, *American Motorcycle* was modifying the all-or-nothing common law doctrine of *equitable indemnity.* As the court explained in *Peters* v. *City & County of San Francisco* . . . , 'a right of indemnification may arise as a result of *contract* or *equitable considerations . . . .*' (Italics added.) None of the discussion in *American Motorcycle* leads to the slightest suggestion that the court was addressing itself to the all-or-nothing right of indemnification that is created by the parties to an indemnity contract."

And in *Held* v. *Arant*, 67 Cal.App.3d 748, 750 [134 Cal.Rptr. 422], the court stated (pre-*AMA*):[1] "Because reasons of policy peculiar to the tripartite relationship of attorney-client-adversary override the principle of equitable indemnity enunciated in cases such as *Herrero* v. *Atkinson* . . . and *Niles* v. *City of San Rafael* . . . , we conclude that the first lawyer has no right of indemnity from the second."

Thus, *AMA* makes not a rule of general application but a rule riddled with exceptions. Partial indemnity is permitted only in appropriate cases. It is with this precise holding and the rationale underpinning *AMA* in mind that the facts, the circumstances of this case must be viewed. We need only to count the gross differences, factual, legal, equitable, and of public policy, to distinguish, to make the *AMA* rule inapposite.

## IV

We examine first the factual matrix of this cross-complaint. A charged wrongdoer seeks to compel his victim's lawyer to shoulder a portion of the damages on the premise the lawyer, guilty of malpractice in advising his former client, is a *joint tortfeasor* joinable, required to contribute under *AMA* principles.

In discussing the liability of a joint tortfeasor, *AMA* (p. 588) points out "a concurrent tortfeasor is liable for the whole of an indivisible injury whenever his negligence is a proximate cause of that injury." ■ Thus the liability for a wrongful act attaches for all the damages ensuing from the wrong regardless of the degree of participation by the tortfeasor in that wrong. (*Tuman* v. *Brown*, 59 Cal.App.2d 16, 25 [138 P.2d 363]; *Hughey* v. *Candoli*, 159 Cal.App.2d 231, 240 [323 P.2d 779]; *Dawson* v. *Schloss*, 93 Cal. 194 [29 P. 31]; Prosser, Law of Torts (4th ed.) pp. 291, 293, 297-298; 14 Cal.Jur.3d, Contribution and Indemnification, § 73, p. 740.)

This essential characteristic of a joint tortfeasor is *not* shared by the attorney charged with legal malpractice with respect to a client.

The lawyer's duty to his client arises from his contractual obligation as well as ethical demands. When a lawyer negligently advises his client, a violation of his duty occurs. The resultant legal malpractice constitutes

[1]This self-same appeal court, before writing *Held* v. *Arant, supra*, authored a prescient decision in *AMA* v. *Superior Court*. The subsequent Supreme Court decision in *AMA, supra*, parallels the superseded appellate decision in reasoning and result.

both a tort and breach of contract. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 181 [98 Cal.Rptr. 837, 491 P.2d 421].) However, for an actionable legal liability of the lawyer to his client to arise further elements must be present.

As set out in *Budd* v. *Nixen,* 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433], the elements of legal malpractice, like those of any other action for negligence, are:

"(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.]

"If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, *until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice."* (Italics added.)

It is black letter law that damages—"appreciable harm"—may not be based on speculation or surmise; mere possibility or even probability that damage will result from wrongful conduct does not render it actionable. (*Ventura County Humane Society* v. *Holloway,* 40 Cal.App.3d 897, 907 [115 Cal.Rptr. 464].) Thus until Lipscomb's action against the Title Companies evidences *damages* actually sustained, no cause of action exists for the lawyer's misadvice. If Lipscomb recovers from Title Companies, despite negligence of the lawyer, such amount would reduce "the damages proximately resulting from respondents' [lawyers'] negligence." (*Theobald* v. *Byers,* 193 Cal.App.2d 147, 153 [13 Cal.Rptr. 864]; *Kirtland & Packard* v. *Superior Court,* 59 Cal.App.3d 140 [131 Cal.Rptr. 418].) Furthermore, if we assume again that lawyer negligence has been established, the defense of the client's contributory negligence may properly be raised. The attorney may show that the client has disregarded the legal advice given by the attorney. (*Theobald* v. *Byers, supra,* at p. 150; *Ishmael* v. *Millington,* 241 Cal.App.2d 520, 530 [50 Cal.Rptr. 592]; 7 Cal.Jur.3d, Attorneys at Law, § 283, p. 621.)

In light of the foregoing well-established rules, the language of *McGregor* v. *Wright,* 117 Cal.App. 186, 196 [3 P.2d 624], becomes clothed with legal rectitude. "Under the laws of negligence, it became necessary for plaintiff to prove, not merely that his action upon the advice of the defendants contributed to his removal, but it must be established that the reliance upon erroneous advice was the sole and proximate cause of such removal and the loss sustained. [Citation.] It is likewise established that before a client can recover for alleged negligence of his attorneys he must establish that any loss suffered was caused solely by the negligence of the attorney. [Citations.]"

By definition, joint tortfeasors are jointly and severally liable for the *entire* damage proximately resulting. (14 Cal.Jur.3d, Contribution and Indemnifications, § 73, p. 740, and cases cited.)

The negligent lawyer simply does not fit into the true joint tortfeasor status present in *AMA* or *Safeway Stores, Inc.* v. *Nest-Kart,* 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441], for he is not *responsible* for the entire damage when he is joined as a joint tortfeasor with his client's legal opponent.

## V

█ A second set of circumstances distinguishes this case, removes it from the penumbral effect of *AMA.* Ordinarily independent tortfeasors who do not act in concert are not jointly liable even though their acts have united to produce one injury. (*Miller* v. *Highland Ditch Co.,* 87 Cal. 430, 431 [25 P. 550]; *Griffith* v. *Kerrigan,* 109 Cal.App.2d 637, 640 [241 P.2d 296].) Each is responsible only for the part of the damage resulting from his own acts. (*Slater* v. *Pacific American Oil Co.,* 212 Cal. 648, 651-652 [300 P. 31]; *Summers* v. *Tice,* 33 Cal.2d 80, 87 [199 P.2d 1, 5 A.L.R.2d 91].)

As discussed above, the negligent lawyer's liability proceeds from a totally different source, factually and legally, from that of his client's opponent. The lawyer certainly does not act in "concert" with the opposition to produce the injuries to his client. His wrong arises from the failure to exercise the reasonable lawyer skill in performance of his task. (*Lucas* v. *Hamm,* 56 Cal.2d 583, 591 [15 Cal.Rptr. 821, 364 P.2d 685].) The Title Companies are charged with negligent misrepresentation in connection with a lot book guaranty. These are independent wrongs. They do not arise from violation of a common duty as in *American Motorcycle* or

*Safeway* v. *Nest-Kart.* Each of these independent wrongdoers is responsible for only his own damage. (14 Cal.Jur.3d, Contribution and Indemnity, § 73, p. 741.)

Therefore, when we examine this particular fact matrix through the eyes of the legal technician, it may be reasonably concluded the acts of Title Companies are in the nature of an independent intervening cause. (See *Zalta* v. *Billips,* 81 Cal.App.3d 183, 191 [144 Cal.Rptr. 888].) The lawyer's damage responsibility ended—as a matter of law—where the negligence of Title Companies began. The negligence of Title Companies operated factually independent of the lawyer neglect to cause damage. It cut the causal connection between lawyer negligence and his client's damage. (*Werkman* v. *Howard Zink Corp.,* 97 Cal.App.2d 418 [218 P.2d 43].) If the act of the third party is not reasonably foreseeable, not a normal consequence in the situation, it is a superseding cause. (*Schrimscher* v. *Bryson,* 58 Cal.App.3d 660 [130 Cal.Rptr. 125]; *Jimison* v. *United States,* 267 F.Supp. 674, 678; *Ewart* v. *Southern Cal. Gas Co.,* 237 Cal.App.2d 163 [46 Cal.Rptr. 631].)

But enough of these technical perseverations. We turn now to the most disturbing aspect of the Title Companies' pleadings. The Title Companies are charged wrongdoers. They seek to sue their victim's former lawyer, charging him in effect with negligence in failing to disbelieve the Title Companies, to intuit third parties' wrongdoings.

■ The public policy, the equitable considerations underpinning *Li* v. *Yellow Cab, supra,* and *AMA,* do not fit, do not stretch so far as to cover this specie of relationship. Authorizing suit against the lawyer could cause these immediate repercussions.

In the first place, if the lawyer is to be joined, then his former client, the *plaintiff,* can be properly cross-sued on a contributory neglect concept. (*Theobald* v. *Byers, supra,* 193 Cal.App.2d 147.) And if plaintiff's attorney, or former attorney, can be sued by defendant on a theory of negligent advice to his client causing damage, then too in fairness, defendant's lawyer on the same legal theory—negligent advice to his client causing contingent damage—could be brought in on the same flying carpet of legal unreality.

But to return to solid legal firmament, reasons of public policy peculiar to the attorney-client relationship vis-à-vis an adversary make the application of equitable indemnity principles enunciated in *American*

*Motorcycle* untenable. The lawyer has the duty of undivided loyalty. He may not acquire an adverse interest to his client. He should not be forced to choose between conflicting interests. The attorney is under an obligation to preserve the secrets of his client "at every peril to himself." (Bus. & Prof. Code, § 6068, subd. (e).) This duty is owed both *present* and *former* clients. (ABA Code of Prof. Responsibility, EC 4-6). Only the *client* can release the attorney from the obligation. (*Earl Scheib, Inc.* v. *Superior Court,* 253 Cal.App.2d 703 [61 Cal.Rptr. 386].) It is the policy of the court to encourage confidence and to preserve inviolate this relationship of client-lawyer. (*In re Ochse,* 38 Cal.2d 230 [238 P.2d 561].)

This limited review of but a few of the ethical, public policy considerations affecting the lawyer-client relationship must be placed in the context of authorization of cross-suit in this action against the former attorney. If suit were to be permitted against the current acting attorney for plaintiff, such rule would effectively allow a defendant to require plaintiff's now-sued attorney for multiple reasons to recuse himself. The present or past attorney has his mouth sealed—he must preserve his client's secrets inviolate at all peril to himself. Further, the chilling effect of such a threat of suit by a potential or actual adversary—for negligent advice to the client—is ever present. The lawyer's duty in re full and frank discussion and disclosure could not help but be affected by this overhanging threat of a lawsuit brought by a person about whom the lawyer is advising his client. There is inherent in proposed extension of the *AMA* rule the seeds of irresponsible cross-lawsuits motivated by naught but spite and a desire to spread confusion, dissention in the opponent's camp. As was said in *Held* v. *Arant, supra,* 67 Cal.App.3d 748, 752:

"Where, however, an attorney is retained to represent the interests of his client against persons who are actual or potential adversaries, the possibility that one of those adversaries may seek indemnity from the attorney if he is held liable to the client can impinge upon the undivided loyalty owed by counsel.

". . . MM&H [the lawyers] owed an undivided loyalty to Held to use its best judgment to extricate him from the situation created by Arant's advice. Extrication involved consideration both of resistance of the claim of Nova-Tech and of the assertion of an affirmative claim against Arant. MM&H's ability to choose between courses of conduct best designed to protect the interests of its client cannot be inhibited by the proposition that if it chooses the course of resistance of the claim it will be immune

from liability to the one adversary absent malicious prosecution [citation] while if it chooses the course of prosecuting the client's claim for malpractice against a prior attorney it may be subject to a claim to indemnify that attorney."

The Supreme Court reasoned in *Goodman* v. *Kennedy,* 18 Cal.3d 335, 344 [134 Cal.Rptr. 375, 556 P.2d 737]: "To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role. The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal 'would prevent him from devoting his entire energies to his client's interests' [citation]. The result would be both 'an undue burden on the profession' [citation] and a diminution in the quality of the legal services received by the client. [Citation.]" (Fn. omitted.) (See also *Norton* v. *Hines,* 49 Cal.App.3d 917, 923 [123 Cal.Rptr. 237]; *DeLuca* v. *Whatley,* 42 Cal.App.3d 574, 576 [117 Cal.Rptr. 63].)

We are bound by such pertinent reasoning and conclusions.

Judgment affirmed.

Wiener, J., concurred.

**COLOGNE, Acting P. J.**—I concur with the majority opinion which holds this is a proper case for the issuance of an extraordinary writ under the authority of *Babb* v. *Superior Court,* 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379], but I must respectfully dissent from the opinion in its refusal to extend the principles of *American Motorcycle Assn.* v. *Superior Court,* 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], to the issues presented.

We are called upon to apply the principles set forth in *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, to allow a cross-complaint seeking partial indemnity by a joint tortfeasor so that liability may be apportioned on a comparative negligence basis. The fact the joint tortfeasor is an attorney should not deter the court from

exercising its responsibility to impose equitable indemnity especially where, as here, the client has waived the attorney-client privilege.

The holding in *American Motorcycle* generally eliminates a trial court's discretion to deny filing of a cross-complaint for indemnity if it can withstand a demurrer. No discretion is permitted in the case at bar since under *American Motorcycle* the cross-complaint against the joint tortfeasors must be allowed.

The facts of *American Motorcycle* are analogous to those of the present case. That case involved a personal injury action against the sponsor of a motorcycle race by a youthful participant in the race. The American Motorcycle Association (AMA) sought to cross-complain for partial indemnity against the boy's parents, claiming their negligent supervision was a concurrent cause of the boy's injuries. The trial court denied AMA leave to file the cross-complaint.

After concluding "that a concurrent tortfeasor enjoys a common law right to obtain partial indemnification from other concurrent tortfeasors on a comparative fault basis," the court found that the governing provisions of the Code of Civil Procedure (§ 428.10 et seq.) authorize a defendant to seek indemnification from a previously unnamed party through such a cross-complaint. (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, 605-607.) The court, accordingly, held the trial court's decision to deny defendant leave to file its pleading to be in error.

In commenting on the trial court's authority to order a separate trial of *any* cause of action (Code Civ. Proc., § 1048), the court recognized that in the context of the facts presented on a comparative indemnity claim, "severance may at times not be an attractive alternative," given the "fact that when the plaintiff is alleged to have been partially at fault for the injury, each of the third party defendants will have the right to litigate the question of the plaintiff's proportionate fault for the accident," thus raising the specter of inconsistent findings regarding the plaintiff's proportionate fault (*American Motorcycle, supra,* at p. 606).

Although thereby purporting to give the trial court some, albeit small, degree of discretion in determining whether to order a separate trial of the cause of action alleged in the cross-complaint, the court proceeded to effectively withdraw even that degree of discretion. The court stated: "Nonetheless, having already noted that under the comparative negli-

gence doctrine a plaintiff's recovery should be diminished only by that proportion which the plaintiff's negligence bears to that of all tortfeasors . . ., we think it only fair that a defendant who may be jointly and severally liable for all of the plaintiff's damages be permitted to bring other concurrent tortfeasors into the suit. Thus, we conclude that the interaction of the partial indemnity doctrine with California's existing cross-complaint procedures works no undue prejudice to the rights of plaintiffs." (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, 606.) The court thus concluded: "[U]nder the governing statutory provisions a defendant is *generally authorized* to file a cross-complaint against a concurrent tortfeasor for partial indemnity on a comparative fault basis, even when such concurrent tortfeasor has not been named a defendant in the original complaint." (*American Motorcycle, supra,* at p. 607; italics added.)

The court explains the qualification of the rule suggested by the phrase "generally authorized" to be those cases where the statutory law, e.g., Labor Code section 3864, does not allow indemnification or where a concurrent tortfeasor has made a good faith settlement (see *American Motorcycle, supra,* 20 Cal.3d 578, at p. 607, fn. 9). There appears to be no substantial reason why this "general authorization" should not apply to the case at hand, leaving only the question of whether the allegations of petitioners' cross-complaint are sufficient to suggest that plaintiff's attorney in the transaction in question may have been negligent toward Lipscomb and that his negligence may have been a concurrent cause of the injury.

Smith takes the position that the court below was correct in denying permission to file the subject pleading since it was insufficient to state a cause of action (see *Dunzweiler* v. *Superior Court,* 267 Cal.App.2d 569 [73 Cal.Rptr. 331]). While I agree that the trial judge has discretion to deny permission to file such a pleading if it states no cause of action, that is not the case here.

The Title Companies need only allege the same basic elements of duty, breach of duty, proximate cause, damages[1] to show actionable negligence of an attorney toward his client as in any other actionable

---

[1]The elements of the cause of action are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. (*Budd* v. *Nixen,* 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].)

negligence (*Ishmael* v. *Millington,* 241 Cal.App.2d 520, 523 [50 Cal.Rptr. 592]). Then they must show that this negligence toward the client may have been a concurrent cause of the plaintiff's injury. (See *American Motorcycle, supra,* 20 Cal.3d 578, 607.) This minimal standard is met by the allegations in the cross-complaint.

The majority holds public policy considerations preclude an adversary from pursuing a cause of action for equitable indemnity against an opponent's attorney arising from an attorney's allegedly negligent advice to the opponent. The opinion relies heavily on *Held* v. *Arant,* 67 Cal.App.3d 748 [134 Cal.Rptr. 422], for this proposition.

In *Held,* the defendant attorney in a malpractice action sought indemnification from the attorney who had been retained to represent the plaintiff, his former client. The alleged negligence of plaintiff's present attorney was in settling with third parties in such a manner as to expose the defendant attorney to damages for malpractice. The appellate court upheld the sustaining of the demurrer to this cross-complaint for indemnity on policy grounds.

The court reasoned that allowing such an indemnity action to be filed would be detrimental to the attorney-client relationship. When an attorney knows he may have to indemnify an adversary if he pursues one course for his client and that he will not have to indemnify anyone if he pursues a different course, his own self-interest interferes with his objectivity in making decisions for his client. To avoid this possibility, the court would not allow the indemnity action to be brought in that particular situation.

The present case, however, presents no considerations of interference with the attorney-client relationship. Assuming there is proof of the allegations, Smith's judgment in relying upon the lot book guarantee and the representations of the other parties to the exchange contract was not detrimentally affected by the potential of having to indemnify the petitioners. If anything, such a threat would encourage Smith to use even greater care in protecting his client. Thus the policy considerations of *Held* are lacking here.

Smith relies on *Goodman* v. *Kennedy,* 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737], asserting he owed the Title Companies no duty of due care. I believe his reliance on *Goodman, supra,* is misplaced since the Title Companies do not contend he breached a duty to them. They only

contend that he breached his duty of care *to his client* which, along with their alleged negligence, makes him a concurrent tortfeasor who must indemnify them if they are found liable.

I do not believe the language of *McGregor* v. *Wright,* 117 Cal.App. 186, 196 [3 P.2d 624], was intended to mean, as the majority apparently asserts, that only when the attorney is the *sole* cause of the damages may he be held liable for his negligence (see *Modica* v. *Crist,* 129 Cal.App.2d 144, 147 [276 P.2d 614]). The cases relied on[2] deal with special fact situations. Most of the cases involved possible concurrent negligence of the client and the rule that contributory negligence would bar recovery, a doctrine no longer in use (*Li* v. *Yellow Cab Co.,* 13 Cal.3d 804, 812-813, 829 [119 Cal.Rptr. 858, 532 P.2d 1226]). In such cases under the former law it is apparent the client's negligence would be a bar to liability under the contributory negligence doctrine and it was essential the attorney's negligence be the "sole and proximate cause." In addition, where the attorney failed to assert a *nonmeritorious* defense, his "negligence" would result in no liability (see *Frost* v. *Hanscome,* 198 Cal. 550 [246 P. 53]).

This issue is well covered in *Modica* v. *Crist, supra,* 129 Cal.App.2d 144, 147-148: "Defendants contend a complaint against an attorney for alleged negligence in the giving of advice must allege facts which show that any loss was *caused solely* by the attorney's negligence and must *negative any other probable cause* for the loss. We know of no such requirement. Defendants' authorities do not support their contention.

"*Lally* v. *Kuster,* 177 Cal. 783 [171 P. 961], was an action for an attorney's negligence in not bringing a certain debt collection suit to trial, a suit which had been dismissed for delay. Judgment was given the defendant upon the ground that there was no debt to collect, that it had been relinquished by the life beneficiary of the note. It was reversed because the life beneficiary had no right to relinquish the principal. Defendants invoke a few words, out of context, to the effect that the client must allege and prove facts showing that 'but for such negligence, the debt could, or would, have been collected.' This 'but for' clause is merely one way of expressing the requirement that negligence to be actionable must be a proximate cause of the injury. [Citations.] The words quoted by defendant do not connote a requirement that the attorney's negligence be the sole cause or that the complaint must negative any other cause. This is

---

[2] *Theobald* v. *Byers,* 193 Cal.App.2d 147 [13 Cal.Rptr. 864]; *McGregor* v. *Wright, supra,* 117 Cal.App. 186; *Ishmael* v. *Millington, supra,* 241 Cal.App.2d 520, 530 [50 Cal.Rptr. 592].

doubly apparent from the court's discussion of the measure of damages on page 791 of 177 Cal.

"Nor does *Martin* v. *Hood,* 203 Cal. 351 [264 P.2d 478], support defendants' contention. It merely held insufficient a complaint which upon its face showed no damage had occurred from a failure to give notice of intended sale under section 3440 of the Civil Code. The only 'loss' which ensued was a creditor's execution sale which was void upon its face and could give no title to the purchaser at the sale. That was a case of 'no injury,' not a case of failure to show 'sole cause' or to negative any other cause, whether concurrent, joint or intervening.

"In *McGregor* v. *Wright,* 117 Cal.App. 186 [3 P.2d 624], the statement does appear that it must be established that reliance upon the attorney's advice was the 'sole and proximate cause' and that any loss suffered was 'caused solely' by the negligence of the attorney. We should not attach undue significance to the words 'sole' and 'solely.' The real holding in the case was a lack of causal connection between the asserted erroneous legal advice and the claimed injury, and the uncertain and speculative quality of the asserted financial loss 'not only as to amount but as to character.' Also, those findings and conclusions were based upon the evidence introduced at a trial, not drawn as conclusions of law from the allegations of a complaint.

"*Feldesman* v. *McGovern, supra,* 44 Cal.App.2d 566 [112 P.2d 645], held merely that when a cause of action is predicated upon an attorney's negligent failure to perform some act in behalf of the client, the complaint must state facts showing that if the attorney had acted it would have resulted beneficially to the client. In that case the attorney allegedly failed to file a petition for the discharge of the client as a bankrupt. There was no allegation which directly or by implication stated that if such a petition had been filed the client would have been entitled to have it granted. This was a fatal defect because the granting of such a petition is not mandatory. A bankrupt is entitled to a discharge only if he has complied with the Bankruptcy Act and has not committed any of the offenses listed in the statute. Hence, the Feldesman case was one of failure sufficiently to plead proximate cause, not at all a holding that an attorney is liable to a client only when his negligence is the sole cause of the resultant injury.

"A complete answer to defendants' contention is furnished by two cases in which, though not attorney-client cases, the question of 'sole

cause' was *directly* raised and answered. 'The law does not require that negligence of the defendant must be the sole cause of the injury complained of in order to entitle the plaintiff to damages therefor. All that is required in either respect is that the negligence in question shall be *a* proximate cause of the injury complained of . . .' (*Griffith* v. *Oak Ridge Oil Co.,* 190 Cal. 389, 392 [212 P. 913].) This was followed in *Condon* v. *Ansaldi,* 203 Cal. 180, 183 [263 P. 198], which held prejudicially erroneous an instruction that ' "unless the defendant is solely responsible for the occurrence of the accident complained of, your verdict must be for the defendant." ' These rulings would furnish support for the formula suggested by Prosser in 'Proximate Cause in California,' 38 Cal.L.Rev. 369, 378: 'The defendant's conduct is a cause of the event if it was a material element and a substantial factor in bringing it about. Whether it is such a substantial factor is for the jury to determine, unless the issue is so clear that reasonable men cannot differ.' "

This doctrine was reaffirmed in *Ishmael* v. *Millington, supra,* 241 Cal.App.2d 520, 529, where the court said: "Legal malpractice may consist of a negligent failure to act. (*Feldesman* v. *McGovern,* 44 Cal.App.2d 566, 568 [112 P.2d 645]; see *Gambert* v. *Hart, supra,* 44 Cal. at p. 552; *Hege* v. *Worthington, Park & Worthington, supra,* 209 Cal.App.2d at pp. 676-678 [26 Cal.Rptr. 132]; *Pete* v. *Henderson,* 124 Cal.App.2d 487-489 [269 P.2d 78].) *The attorney's negligence,* whether consisting of active conduct or a failure to act, *need not be the sole cause of the client's loss.* (*Modica* v. *Crist, supra,* 129 Cal.App.2d at p. 146; see 2 Witkin, Summary of Cal. Law (1960) p. 1485; Prosser, *Proximate Cause in California,* 38 Cal.L.Rev. 369, 378.) Here the attorney is charged not with erroneous advice, but with failure to advise, failure to investigate, failure to disclose. The wife's reliance on her husband's alleged misrepresentations is not at all inconsistent with the claim that her loss was the result of the attorney's negligent failure. A jury might find that the husband's misrepresentations were a realizable likelihood which made the attorney's inaction negligent, thus forming a concurrent (and not superseding) cause of harm. (*Richardson* v. *Ham,* 44 Cal.2d 772, 777 [285 P.2d 269]; *Mosley* v. *Arden Farms Co., supra,* 26 Cal.2d at pp. 218-219 [157 P.2d 372, 158 A.L.R. 872]; Rest.2d Torts, § 449.)" (Italics added.)

Certainly the attorney's allegedly negligent advice could make him a joint tortfeasor liable for some portion of the damages.

The public policy of preserving inviolate the attorney-client relationship is not in issue in this case since Lipscomb has already served its

attorney, Smith,[3] making him a party and thereby waiving any such privilege. (cf. former Code Civ. Proc., § 1881, subd. (4), dealing with physicians and *San Francisco* v. *Superior Court,* 37 Cal.2d 227, 232 [231 P.2d 26, 25 A.L.R.2d 1418].) In any event, the violation of the privilege is not yet in issue. The privilege only is in issue as it relates to admission of evidence by the attorney revealing confidential communication (see Evid. Code, §§ 952, 954, 955), a matter totally unrelated to the issue here, namely, joinder as a party for indemnity. How the Title Companies intend to prove Smith's negligence is not yet before us. The importance of having all tortfeasors before the court to secure a defendant's right of indemnity overrides the plaintiff's right to shield his attorney and, incidentally, his own behavior, on the issues he has raised by the lawsuit. I find the sanctity of their relationship in this regard no more sacred than the public policy calling for family harmony that was involved in *American Motorcycle* (at p. 607; see also *Gibson* v. *Gibson,* 3 Cal.3d 914 [92 Cal.Rptr. 288, 479 P.2d 648]) where a parent was allowed to be joined as a tortfeasor for purposes of indemnity in his own child's action.

I would order the trial court to permit the filing of the second proposed first amended cross-complaint.

A petition for a rehearing was denied May 25, 1979, and petitioners' application for a hearing by the Supreme Court was denied July 19, 1979. Clark, J., was of the opinion that the petition should be granted.

---

[3]The parties readily admitted this service at the time of oral argument.