Nancy C. EUSTIS, Plaintiff,

v.

The DAVID AGENCY, INC., Defendant,

v.

HARTFORD CASUALTY INSURANCE COMPANY, Defendant and Third–Party Plaintiff, Appellant,

v.

Warren EUSTIS, Third–Party Defendant, Respondent.

No. C3–87–1280.

Court of Appeals of Minnesota.

Dec. 29, 1987.

John C. Goetz, Schwebel, Goetz & Sieben, P.A., Minneapolis, for Nancy C. Eustis.

Michael D. Hutchens, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for David Agency, Inc.

Donald M. Jardine, Marie A. Darst, Jardine, Logan & O'Brien, St. Paul, for Hartford Cas. Ins. Co.

Gary J. Haugen, Justin H. Perl, Maslon, Edelman, Borman & Brand, Minneapolis, for Warren Eustis.

Heard, considered and decided by NORTON, P.J., and LOMMEN* and IVERSON,* JJ.

## OPINION

A. PAUL LOMMEN, Judge.

This appeal is from a summary judgment dismissing respondent as a third-party defendant in the underlying action. There, plaintiff brought suit against appellant to set aside a settlement and release agreement based on fraud, misrepresentation, mistake and improvidence. Appellant in turn joined respondent, plaintiff's husband and attorney, as a third-party defendant seeking contribution and indemnity based on his alleged fraudulent/negligent conduct in negotiating the settlement. Appellant claims the trial court misapplied the law in dismissing its contribution claim. Appellant also claims the court erred in summarily dismissing its indemnity claim and denying its motion to amend that claim in its third-party complaint by finding appellant failed to substantiate its allegation respondent committed fraud. We affirm.

* Acting as judges of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## FACTS

This action arises out of an automobile accident on September 14, 1981, which rendered plaintiff Nancy Eustis, not a party to this appeal, a quadriplegic. The driver who struck plaintiff had only $25,000 in liability coverage. Because plaintiff's injuries greatly exceeded that amount, it became necessary to determine whether the plaintiff had any underinsured coverage available.

The plaintiff was initially represented by Gilmore, de Lambert, Eustis & Aafedt (the Gilmore firm), of which her husband, respondent Warren Eustis, was a member. One of the policies which provided potential coverage was issued by appellant Hartford Casualty Insurance Company, covering the Gilmore firm's automobiles. The policy did not mention "underinsured" but defined "uninsured motor vehicle" as a vehicle:

> For which the sum of all liability bonds or policies at the time of an accident provides at least the amounts required by the applicable law where a covered auto is principally garaged but their limits are less than the limit of this insurance * * *.

After the accident a member of the Gilmore firm contacted an insurance agent from The David Agency, where the Gilmore firm purchased its policy. The David Agency is also a defendant in the underlying action but not a party to this appeal. When asked whether the policy provided underinsured coverage, the insurance agent stated that the Gilmore firm did not have underinsured coverage. The David Agency agent later contacted Hartford's representative, who eventually informed him there was underinsured coverage in the fine print with a limit of $500,000 on each of the firm's five vehicles. For some reason, the David Agency agent failed to inform the Gilmore firm of this fact.

In December 1981, respondent wrote to appellant, setting out the nature of the various coverages which he understood it provided. Respondent stated appellant's policy provided only personal injury protection (PIP) coverage and an umbrella liabili-

ty policy on one of the Gilmore firm's vehicles. He did not state, as he did not recognize, the existence of underinsured coverage.

In March 1982, a settlement conference was held between respondent, acting on behalf of his wife, and a representative from another insurance company to negotiate a settlement of its underinsured coverage. Appellant's representative also attended. Respondent testified that throughout these negotiations, he believed there was no underinsured coverage in appellant's policy.

On May 3, 1982, a settlement and release agreement was reached with the other insurance company for its underinsured liability. As a part of that settlement, appellant provided $235,597.44. The check plaintiff received from appellant stated that sum was "in full settlement of uninsured motorist claims."

The May 3, 1982 settlement agreement specifically provided that appellant's policy "provided *underinsured* motorist coverage, among other coverages." (Emphasis added). The agreement contained a warranties section providing all parties warrant that they have "read this agreement and/or been fully advised of the terms * * *." The parties further warranted that "this release and agreement is executed without reliance upon any statement, promise, representation or inducement by any other party or agent."

The agreement also provided a general indemnification section wherein each party warranted to "indemnify and hold harmless every other party * * * in event of any breach of this agreement." Respondent advised plaintiff to sign the agreement and both plaintiff and respondent signed individually.

After the settlement agreement was executed, plaintiff's subsequent counsel, who was pursuing another aspect of her recovery, discovered the reference within the uninsured definition of appellant's policy incorporated a definition of underinsured coverage. As a result, plaintiff asserted a claim against the Gilmore firm for its negligence in advising her to settle for only a $235,000 payment and potentially giving up further claims against appellant. That claim against the Gilmore firm was settled for $900,000.

In September 1984, plaintiff commenced this action against appellant seeking equitable rescission of the May 3, 1982 settlement agreement as between her and appellant. She alleged appellant acted fraudulently by concealing and failing to disclose the policy coverage; the insurance agent at The David Agency negligently misrepresented the policy coverage to her attorneys and his conduct is attributable to appellant; appellant failed to correct her attorneys' mistake as to policy coverage; and the settlement was improvident as a matter of law.

In the course of discovery, appellant took respondent's deposition, in which he stated the only part of the agreement he ever recalled reading was the sum of amounts. He also stated he did not know appellant had underinsured motorist coverage.

Appellant then moved to join respondent as a third-party defendant. By order filed July 23, 1986, the trial court granted its motion. In its third-party complaint, appellant alleged:

That if plaintiff was induced to execute the settlement agreement on or about May 3, 1982, and if said agreement was improvident and obtained by mistake and/or fraudulent conduct, as alleged by plaintiff, said improvidence, mistake, fraudulent and/or negligent conduct was the conduct of plaintiff's attorney, Warren P. Eustis.

Based on these allegations, appellant asserted a claim of damages for contribution and/or indemnity from respondent.

In January 1987, respondent moved for summary judgment dismissing the third-party complaint. Appellant opposed the motion and moved to amend its third-party complaint to clarify its indemnity claim based on the alleged fraudulent conduct of respondent individually.

By order filed March 10, 1987, the trial court granted respondent summary judgment and dismissed respondent from the

underlying action. The court also denied appellant's motion to amend its complaint by determining from the facts presented, appellant did not substantiate its allegation of fraud against respondent. The court found no just reason for delay and ordered judgment be entered on the order pursuant to Minn.R.Civ.P. 54.02. Appellant appeals the trial court's dismissal of the third-party action against respondent and denial of its motion to amend the third-party complaint reviewable under Minn.R.Civ.App.P. 103.-04.

## ISSUES

1. Did the trial court err in dismissing appellant's contribution claim against respondent for his alleged negligence in advising plaintiff as her attorney?

2. Did the trial court err in dismissing appellant's indemnity claim by finding appellant failed to substantiate its allegation respondent committed fraud?

## ANALYSIS

1. Summary judgment is appropriate if the pleadings, affidavits and other documents before the court clearly show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. Regarding dismissal of its contribution claim, appellant claims the trial court erred in its application of law.

The trial court applied the well-established rule that an attorney will not be liable to a non-client third-party for negligence. Liability arises only if that attorney acted with fraud, malice, or has otherwise committed an intentional tort. *Farmer v. Crosby*, 43 Minn. 459, 461, 45 N.W. 866 (1890). The trial court stated there was no attorney-client relationship between respondent and appellant. Further, appellant did not establish respondent owed it a duty when entering into the settlement agreement. The court therefore reasoned the applicable law precludes appellant's claim for contribution based upon respondent attorney's alleged negligence.

Appellant concedes the trial court correctly stated the general rule as it relates to a direct claim for negligence. Appellant claims the court misapplied the rule to its claim for contribution arising from common liability and necessitating comparative fault. Appellant argues respondent's conduct which allegedly resulted in plaintiff's damages should be compared with appellant's conduct allegedly resulting in those damages. *See Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 370, 104 N.W.2d 843, 846 (Minn.1960) (contribution is right of one party who has discharged greater share of common liability to recover from another party who is also liable for proportionate share).

Respondent relies on *Commercial Standard Title Co., Inc. v. Superior Court*, 92 Cal.App.3d 934, 155 Cal.Rptr. 393 (1979) in which the California Court of Appeals addressed the precise issue and held a non-client third-party may not bring a cross-claim for contribution against plaintiff's attorney based on the attorney's alleged negligence. The *Commercial Standard* court primarily relied on "reasons of public policy peculiar to the attorney-client relationship vis-a-vis an adversary." *Id.* at 944, 155 Cal.Rptr. at 400. The court stated such reasons make the application of equitable contribution and indemnity principles "untenable." *Id.* at 945, 155 Cal.Rptr. at 400. The court explained:

> To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role. The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal 'would prevent him from devoting his entire energies to his client's interests' * * *. The result would be both 'an undue burden on the profession' * * * and a diminution in the quality of the legal services received by the client.

*Id.* at 946, 155 Cal.Rptr. at 401 (quoting *Goodman v. Kennedy,* 18 Cal.3d 335, 344, 134 Cal.Rptr. 375, 381, 556 P.2d 737, 743 (1976) (citations and footnote omitted)). The Minnesota Supreme Court has set forth a similar rationale explaining why a third party is precluded from bringing a negligence claim against an adversary's attorney. *See Hoppe v. Klapperich,* 224 Minn. 224, 241, 28 N.W.2d 780, 791–92 (1947) (zealous advocate must not be deprived of independence in fearlessly presenting a debatable legal cause).

Based on these policy considerations, we conclude appellant's claim against respondent attorney fails despite the fact it is one for contribution as opposed to a direct claim for negligence. The trial court therefore did not err in dismissing appellant's contribution claim against respondent attorney as a third-party defendant. *See Koenigs v. Travis,* 246 Minn. 466, 469, 75 N.W.2d 478, 481 (1956) (substantive basis for third-party claim is prerequisite to use of impleader rule).

 2. When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere averments or denials of his pleading but must present specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Minn.R.Civ.P. 56.05. Similarly, denial of a motion to amend pleadings is proper when the movant fails to establish evidence to support the allegation the movant seeks to amend. *Pischke v. Kellen,* 384 N.W.2d 201, 204 (Minn.Ct.App.1986).

Appellant claims the trial court erred in denying its motion to amend its third-party complaint and dismissing appellant's indemnity claim by finding appellant failed to substantiate its allegation respondent committed fraud. Appellant contends the trial court confused its claims for contribution and/or indemnity against respondent as an attorney and its claim for indemnity against respondent individually under the terms of the settlement agreement.

In the original third-party complaint, appellant sought contribution and/or indemnity for "fraudulent and/or negligent conduct * * * of plaintiff's attorney, Warren P. Eustis." Appellant argued below that respondent's alleged fraudulent conduct as an attorney entitled appellant to maintain its contribution and/or indemnity claim because it falls within the exception that a non-client third-party may maintain a suit against plaintiff's attorney for fraud. *Farmer,* 43 Minn. at 461, 45 N.W. at 866.

 Appellant also sought to amend its third-party complaint to clarify its claim for indemnity against respondent individually. Appellant claimed that under the terms of the settlement agreement, respondent's false representation that he read the agreement constituted fraud. *See generally Davis v. Re–Trac Manufacturing Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967). The amendment reads:

That on or about May 3, 1982, Warren Eustis as an individual signed a Settlement Agreement and Release with Hartford for his claim and Nancy's claim for underinsured motorist coverage. The Settlement Agreement stated that' Mr. Eustis had read the Agreement and/or had been fully informed and had full knowledge of the terms, conditions and effects of this Agreement. Warren Eustis now denies that he fully read the above Agreement. Hartford relied on Warren Eustis' representations when he signed the Agreement.

The representation that Warren Eustis had fully read the Settlement and Release Agreement is a false representation of a material fact which was intentionally or recklessly made without knowledge of its truth and with the intention that Hartford would reasonably act upon it or rely upon it, so as to constitute fraud on the part of Warren Eustis. Warren Eustis' fraudulent conduct has damaged Hartford.

The trial court directly addressed the fraud claim but made no distinction between its allegations against respondent as an attorney or individually. Appellant claims this is error. We disagree because

appellant's claim respondent committed fraud individually is also unsupported by the facts presented.

In *Florenzano v. Olson*, 387 N.W.2d 168 (Minn.1986) the supreme court distinguished between an actionable misrepresentation based on fraud and negligence. A negligent misrepresentation is made "when the misrepresenter has not discovered or communicated certain information that the ordinary person in his or her position would have discovered or communicated." *Id.* at 174. A fraudulent misrepresentation, on the other hand, requires proof "the misrepresenter acted dishonestly or in bad faith, i.e with fraudulent intent." *Id.* at 173. "Wrongful intent, as a state of mind, * * * is normally established through circumstantial evidence." *Id.*

In the instant case, appellant did not present evidence establishing respondent's misrepresentation was fraudulent. The trial court therefore properly found appellant failed to substantiate its allegation of fraud. Accordingly, we conclude the court properly dismissed appellant's indemnity claim based on fraud and denied appellant's motion to amend that claim in its third-party complaint.

### DECISION

The trial court properly dismissed appellant's contribution claim by applying the rule that appellant, a non-client third-party, cannot maintain an action based on negligence against respondent as plaintiff's attorney. The court did not err in finding appellant failed to substantiate its claim respondent defrauded appellant. The court therefore properly dismissed appellant's indemnity claim and denied appellant's motion to amend its third-party complaint.

Affirmed.