EDWARD SOMMA ET AL. *v.* JEROME B. GRACEY ET AL.
(5120)

DUPONT, C. J., DALY and NORCOTT, Js.

Argued November 17, 1987—decision released August 2, 1988

*Paul E. Pollock,* for the appellants-appellees (defendants).

*Richard A. Fuchs,* for the appellees-appellants (plaintiffs).

NORCOTT, J. The defendants appeal from the judgment rendered on a jury verdict in favor of the plaintiffs in an action for legal malpractice. The defendants claim that the trial court erred (1) in submitting certain of the claims of negligence to the jury, and (2) in denying the defendants' motion for judgment notwithstanding the verdict. In their cross appeal, the plaintiffs claim that the trial court erred (1) in instructing the jury that they could reduce the amount of the damage award to the plaintiffs if they found the plaintiffs to be comparatively negligent, and (2) in allowing the jury to reduce the amount of the damage award to Raymond Somma in the absence of any evidence of an agency relationship between Raymond Somma and Edward Somma. We find no error in either the appeal or the cross appeal.

This case involves the sale of a family business. In 1941, the plaintiffs' father opened a small tool shop in Waterbury. The plaintiff Edward Somma began working at the tool shop when it opened. At the time, he was fourteen years of age. Edward Somma continued to work at the shop until 1944 when he went away to college. After spending some time in the Navy and finishing college, Edward went back to work at the family business in 1950. In 1952, Edward was joined in the family business by his brother, the plaintiff Raymond Somma.

The two brothers continued to work at the tool shop as employees until 1960 when their father died. Upon the father's death, Edward Somma became president of the company and Raymond Somma became vice-president. At this time, the company employed approximately twenty people. In 1963, the brothers sold the company. The brothers were represented in the sale by the law firm of Reid and Riege. The Sommas first became acquainted with the firm in 1952, when they had consulted it about some estate matters.

In the years that followed the sale of the business, Edward Somma worked as an estate planner for an insurance company. In 1967, the plaintiffs opened a sign making company. When the company proved to be unprofitable, the plaintiffs dissolved the company. The plaintiffs were represented in the dissolution action by the law firm of Reid and Riege.

The plaintiffs then purchased another small company located in Waterbury. The plaintiffs were represented in this action by the law firm of Reid and Riege, particularly, Jerome Gracey. Thereafter, Edward Somma, acting without representation, sold his interest in this company, and he, along with his brother Raymond, repurchased the family business. The company's name had been changed to Grodel, Inc.

In 1978, the plaintiffs were approached about the sale of Grodel, Inc. At that time, the plaintiffs owned 90 percent of the shares in the company, the other 10 percent having been purchased by other people. Following some preliminary talks with the prospective purchasers, the plaintiffs agreed to the sale. After receiving a letter of intent from the prospective purchasers, Edward Somma engaged the services of the defendants, Reid and Riege, P.C., and particularly Jerome Gracey, to represent the plaintiffs in the sale of the company.

After Edward Somma had consulted with Gracey on several occasions and after Gracey had taken some action on the matter, the sale was consummated on October 4, 1978. The terms of the sale were that Grodel, Inc., would be sold for a price of $2,182,000. This amount was to be paid over a period of years, with $109,022.72 to be paid at closing, $1,491,008.88 to be paid by a series of promissory notes, and $582,000 to be paid to Edward Somma pursuant to a consulting contract. As security for this sale, the purchasers pledged

the stock they received in Grodel, Inc. Further, the promissory notes were guaranteed by an entity known as THFIT, Inc., a trust of the purchaser.

After the closing, the plaintiffs received the first payment due on the promissory notes, but the buyers thereafter defaulted. The plaintiffs, however, did not get their stock back as they believed they would, the company went into bankruptcy, and the plaintiffs suffered a financial loss. Within one year, the buyers of the company had misappropriated over $1,000,000 from the assets of the company. The plaintiffs thereafter instituted the underlying action for malpractice against the defendants.

I

The defendants' first claim is that the trial court erred in submitting the following issues to the jury: (1) whether the defendants were negligent in failing to conduct, or advising the plaintiffs to conduct, an adequate investigation of the buyers; (2) whether the defendants were negligent in failing to conduct an audit or to request sufficient financial information about the buyers and their guarantees; and (3) whether the defendants were negligent in failing to advise the plaintiffs not to accept nonnegotiable promissory notes. We disagree.

The defendants' claim is one of evidentiary sufficiency. "It is established law that it is error for a court to submit to the jury an issue which is wholly unsupported by the evidence. *State* v. *Rose,* 169 Conn. 683, 687, 363 A.2d 1077 [(1975)]." *Novak* v. *Anderson,* 178 Conn. 506, 508, 423 A.2d 147 (1979). In determining whether the evidence is sufficient to support the submission of an issue to the jury, we must review the evidence produced by the plaintiff in the light most favorable to him. *Hoyt* v. *Connecticut Company,* 107 Conn. 160, 161, 139 A.2d 647 (1927). In a legal malpractice action, the plaintiff must produce expert tes-

timony (1) that a breach of the professional standard of care has occurred, and (2) that the breach was the proximate cause of the injuries suffered by the plaintiff. *Pearl* v. *Nelson,* 13 Conn. App. 170, 173, 534 A.2d 1257 (1988); *Campbell* v. *Pommier,* 5 Conn. App. 29, 32, 496 A.2d 975 (1985). We find that the plaintiffs produced sufficient expert testimony to have these issues submitted to the jury.

The plaintiffs produced two witnesses who were qualified as experts in the field of business and corporate law. Each of the expert witnesses testified as to a lawyer's standard of care in a business purchase situation. Each of the witnesses also testified that the defendants had breached that standard of care, and that the defendants' breach was the proximate cause of the losses incurred by the plaintiffs. One of the expert witnesses specifically testified that the defendants had been negligent in allowing the security note to be non-negotiable and in failing to conduct or failing to instruct the plaintiffs to conduct an investigation of the prospective purchasers. While this evidence was far from overwhelming on the issues of negligence in question, it was sufficient to support the submission of those issues to the jury. As we have noted before, "[a] party has the same right to submit a weak case as he has to submit a strong one . . . ." *Strickland* v. *Vescovi,* 3 Conn. App. 10, 16, 484 A.2d 460 (1984); see also *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* 187 Conn. 544, 548, 447 A.2d 406 (1982).

## II

The defendants' second claim is that the trial court erred in failing to grant their motion for judgment notwithstanding the verdict. Specifically, the defendants contend that their motions should have been granted because the actions of the purchasers constituted a superseding, intervening cause which insulated them from liability. We disagree.

Our review of the trial court's denial of the defendants' motion for judgment notwithstanding the verdict is limited. " 'We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial; *Bleich* v. *Ortiz,* 196 Conn. 498, 501, 493 A.2d 236 (1985); giving particular weight to the "concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . ." ' *Bound Brook Assn.* v. *Norwalk,* 198 Conn. 660, 667, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986), quoting *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643, 211 A.2d 141 (1965). The defendant[s] can prevail on this claim only if we find that the jury could not reasonably and legally have reached its conclusion. *Bound Brook Assn.* v. *Norwalk,* supra." *Aksomitas* v. *Aksomitas,* 205 Conn. 93, 100, 529 A.2d 1314 (1987). In this case, the defendants claim that the actions of the buyers were a superseding cause as a matter of law and that the jury could not reasonably have concluded as it did.

The Restatement of Torts provides that "[t]he act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime . . . ." 2 Restatement (Second) Torts, § 448. The Restatement further provides, however, that the criminal acts of a third party will not constitute a superseding cause if "the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." Id.

In this case, it is clear that the actions of the buyers were criminal in nature. It is also clear, however, that the defendants were aware that the plaintiffs, by entering into this contract for sale, might be subject to exactly the type of thievery that occurred. Attorney Gracey testified that he felt that the security offered by the buyers was insufficient to protect the plaintiffs' interests. He further testified that one of the dangers of having insufficient security was that the plaintiffs would lose a great deal of money if the buyers were thieves. Accordingly, we find that the actions of the buyers did not constitute a superseding cause as a matter of law and that the trial court did not err in denying the defendants' motion for judgment notwithstanding the verdict.

## III

The plaintiffs' first claim on cross appeal is that the trial court erred in instructing the jury on the defense of comparative negligence. Specifically, the plaintiffs claim that there was insufficient evidence to support the submission of this defense to the jury. Before we can rule on whether the evidence was sufficient, we must first resolve what appears to be an issue of first impression in this state; whether the defense of comparative negligence may be properly pleaded in an action for legal malpractice.

Other jurisdictions which have considered this issue have either directly or implicitly held that the defense of comparative or contributory negligence is available in an action for legal malpractice. *Cicorelli* v. *Capobianco*, 89 App. Div. 2d 842, 453 N.Y.S.2d 21 (1982), aff'd, 59 N.Y.2d 626, 449 N.E.2d 1273, 463 N.Y.S.2d 195 (1983); see *Theobald* v. *Byers,* 193 Cal. App. 2d 147, 13 Cal. Rptr. 864 (1961); R. Mallen & V. Levit, Legal Malpractice (2d Ed.) § 351. In so holding, the courts have recognized that the use of this defense has long been sanctioned

in medical malpractice actions. See *Cicorelli* v. *Capobianca,* supra, 22, citing *Dunn* v. *Catholic Med. Center of Brooklyn & Queens,* 55 App. Div. 2d 597, 389 N.Y.S.2d 123 (1976). The courts have noted that there is nothing in the nature of a legal malpractice action which would preclude the use of this defense. *Hansen* v. *Wightman,* 14 Wash. App. 78, 538 P.2d 1238 (1975); see also annot., 45 A.L.R.2d 5, 17, 18.

We agree with the analysis of the other jurisdictions. In situations where the claim of malpractice sounds in negligence; see *Shuster* v. *Buckley,* 5 Conn. App. 473, 478, 500 A.2d 240 (1985); the defense of comparative negligence should be made available. Our own statute dealing with comparative negligence, General Statutes § 52-572h (b), provides that in causes of action based on negligence "[a]ny economic or noneconomic damages allowed shall be diminished in proportion of the percentage of negligence attributable to the person recovering . . . ." We see no basis for distinguishing between actions for legal malpractice and other claims sounding in negligence.

We must now determine whether there was sufficient evidence in this particular case to support the submission of the defense of comparative negligence to the jury. We find that there was.

In their complaint, the plaintiffs alleged that the defendants were negligent in several respects. Specifically, the plaintiffs alleged (1) that the defendants failed to conduct an adequate investigation of the buyers, and (2) that the defendants failed to inform the plaintiffs that they should not have gone through with the deal because there was inadequate security. At trial, the plaintiffs produced expert testimony that, indeed, the defendants had been negligent in those respects.

The defendants produced evidence, however, that they had not agreed to conduct an investigation of the

buyers. Gracey testified that it was the plaintiffs' responsibility to conduct the investigation of the buyers. Gracey further testified that any obligations he might have had in this area were satisfied when he informed the plaintiffs that if he were in their position he would do a more thorough check on the buyers.

The evidence produced by the defendants raised questions about the scope of the attorney-client relationship. An attorney-client relationship is established when the advice and assistance of the attorney is sought and received in matters pertinent to his profession. 7 Am. Jur. 2d, Attorneys at Law § 118. Once the relationship is established, the attorney "is bound to discharge his duties to his client with the strictest fidelity, to observe the highest and utmost good faith towards him, and to inform his client promptly of any known information important to him." Id., § 120; *Gay* v. *Heller,* 252 F.2d 313 (5th Cir. 1958). It is axiomatic, however, that the duty of the attorney to act does not extend to the business of the client in general. *Erickson* v. *Civic Plaza Nat. Bank,* 422 S.W.2d 373 (1967). The obligation of the attorney is to provide the service for which he was hired. 7 Am. Jur. 2d, Attorneys at Law § 129.

In this case, the defendants testified that they were not engaged to conduct an investigation of the buyers. Although the plaintiffs disputed the extent of the representation, there was sufficient evidence to present to the jury the question of what the attorneys' obligations were. R. Mallen & V. Levit, supra, § 659 (the scope of the attorney's duty is a question of fact for the jury to determine). If the attorneys' obligations did not include conducting an investigation of the buyers, then the attorneys could not have been negligent in that respect. The plaintiffs, then, would have been responsible for conducting the investigation, and it would have been their negligence in conducting that investigation which would have been partly responsible for the losses

they incurred. At the same time, the jury could reasonably have found that the defendants were negligent in not telling the plaintiffs not to go through with the deal without more security. Accordingly, this is a situation in which both parties could have been found negligent in some respect and, therefore, the court did not err in instructing the jury on comparative negligence.

## IV

The final claim of error relates solely to the plaintiff Raymond Somma. Raymond Somma claims that because the defendants did not allege the existence of an agency relationship between Edward and himself and because he was not involved in the hiring of the defendants, he could not have been held to have been comparatively negligent.

We find, however, that the issue of agency is not pertinent to this case. In their special defense, the defendants allege that both plaintiffs were negligent in failing to conduct an adequate investigation of the buyer, and it was on this theory that the case was tried to the jury. The court instructed the jury in accordance with the defendants' allegations and the jury returned a general verdict finding the plaintiffs comparatively negligent. Accordingly, we find that the defendants had no obligation to plead the existence of an agency. See Practice Book § 109.

There is no error.

In this opinion the other judges concurred.