[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Edward Calchera, has brought this action against the defendant, David Hnath, a practicing attorney, in the Town of Stratford, Connecticut.
The complaint is drawn in two counts. The first count although not drawn in classic form as such, does allege enough to bring it within the framework of a legal malpractice action. The second count alleges a violation of the Connecticut Unfair Trade Practice Act (CUTPA), C.G.S. 42-110b.
The evidence revealed that the plaintiff and defendant were friendly, were members of the same church and had known each other about two years prior to September 1985. Prior to that time, the plaintiff had been seeking to go into his own business and pursuant thereto, had found a number of advertised businesses for sale, such as gas stations, laundromats, etc. He always consulted with the defendant with respect to such finds, because in his own words "I relied on his expertise and friendship". The defendant admitted that the plaintiff had told him that he trusted him (the defendant). It was the plaintiff's testimony that the defendant discouraged him in pursuing such businesses which he described as the plaintiff's weekly discoveries", although the defendant testified that he always told plaintiff to call the owners on his own.
About September 1985, the defendant told plaintiff of a CT Page 322 Norwalk furniture store which was for sale, and in the plaintiff's words, was described by the defendant as an "established business", "up and coming" and, "a going concern". The defendant claims he told the defendant that the business was owned by a recent client of his. The plaintiff denies this and claimed he did not discover that the seller, Mr. Bert Ellis, had been represented by the defendant until some time in 1986.
The furniture store in Norwalk, which specialized in selling waterbeds, turned out to be anything but an "established business" or "going concern". The defendant had found out about it in August 1985 when he met with Ellis, and, learned that Ellis who had operated such a store in Fairfield, was intending to set up a similar operation in Norwalk as part of a "franchise" operation. He then told the plaintiff about it and the plaintiff met with Ellis in September 1985. The two entered into an agreement which is reflected by the purchase agreement marked as Exhibit A, drawn by the defendant and in which he represented both parties.
It was the defendant's claim that he represented neither party, but simply prepared in writing, the agreement entered into by the plaintiff and Ellis
The court is not persuaded.
The purchase price of the business was $35,000.00, including inventory. It was necessary for the plaintiff to obtain a mortgage on his home to finance the purchase and the defendant represented him in the mortgage closing, for a fee of $600.00, including title search. For preparing the purchase agreement (Exhibit A), he charged each party $350.00. This was one percent of the purchase price and smacks of a legal fee, rather than a scrivener's fee as claimed by the defendant. Paragraph four of the purchase agreement lists the time and place of closing to be held October 1, 1985, in the office of the seller's attorney, David M. Hnath, 67 Allyndale Road, Stratford, Connecticut.
Finally, there is credible testimony from the plaintiff uncontradicted by the defendant, that when discussing the investment contemplated, the defendant asked the plaintiff about his bank balance. Upon being asked why the defendant wanted to know about his bank balance, the plaintiff testified that the defendant's response was, "I have to know. I am going to be your lawyer."
The court finds that in preparing Exhibit A, the so-called purchase agreement, the defendant was acting as the CT Page 323 plaintiff's attorney.
The court further finds that the defendant failed to exercise that degree of care-, skill and diligence which other attorneys in the same or similar locality and in the same line of practice would have exercised in similar circumstances. Bent v. Green, 39 Conn. Sup. 416, 420.
"When a client engages the services of a lawyer in a given piece of business, he is entitled to feel that, until that business is finally disposed of in some manner, he has the undivided loyalty of the one upon whom he looks as his advocate and champion". Grievance Committee v. Rottner, 152 Conn. 59,65. The Code of Professional Responsibility, Canon 5. EC 5-1
provides that the interests of other clients should not be permitted to dilute that loyalty. See also, EC 5-14, 5-15, 5-16.
In this case, the purchase agreement, Exhibit A, was wholly inadequate with respect to the plaintiff's interests and it requires no expert testimony to support this. It is not enough for the defendant to assert that the parties entered into their own agreement and he only acted as a "scrivener". Exhibit A designates the buyer as the Master's Bedroom of Norwalk. There is no evidence as to when the plaintiff suddenly became the Master's Bedroom of Norwalk. There is no evidence of the recording or filing of a trade name to substantiate such. There was never a bill of sale or other document to indicate the transfer of any assets to the plaintiff for which he paid $35,000.00. Paragraph 6(b) of the purchase agreement provides that the property being sold (for which there was no sale) consists of inventory and equipment listed in Schedule A attached hereto and made a part hereof. There is no Schedule A. Paragraph 9 provides for a lease to the plaintiff, in accordance with the terms of the lease attached hereto as Schedule B. There is no Schedule B. In perspective, the plaintiff paid $35,000.00 for a business and in return received no documentary evidence of what he bought.
It would serve no useful purpose to examine the other provisions of the Purchase Agreement. Suffice it to say, it is full of provisions entirely favorable to the seller and disadvantageous to the plaintiff buyer. It is not enough for the defendant to say that this was an agreement wholly entered into by the parties and that all he did was put it on paper. Under the doctrine of cases such as Somma v. Gracey, 15 Conn. App. 371,375, the standard of care of a lawyer in a business purchase situation is to afford, at least minimal advice to the client as to what he is getting into, the track record of the business, how long established, the implications of paragraph CT Page 324 eight requiring the plaintiff to spend a minimum of $10,000.00 per month through the seller, or of paragraph ten, requiring the plaintiff for six months to pay to the seller a minimum of $3,000.00 per month for advertising to be spent how and where determined by the seller.
The second count of the complaint alleges violations of CUTPA. This court feels compelled to observe that litigants are unreasoningly resorting to allegations of CUTPA violations in order to provide additional clout to their complaints where such is not warranted.
"The special relief afforded by CUTPA requires, in a private dispute, the assertion of a public interest that is `specific and substantial'" (citations omitted). "Under guiding federal law, allegedly deceptive acts or practices which arise out of a private contraversy are actionable only if the acts or practices have a potential effect on the general consuming public" (citations omitted). "The private action authorized by CUTPA, General Statutes, 42-110g; is intended to provide additional sanctions to deter unfair trade practices that injure the general consuming public rather than to provide additional remedies for the redress of entirely private wrongs." Ivey, Barnum O'Mara v. Indian Harbor Properties, Inc., 190 Conn. 528, 540. The court can find no such specific or substantial public interest violated by the defendant's conduct or that such conduct had a potential effect on the general consuming public.
With respect to the liability aspects of this case, one further matter should be mentioned. The defendant has filed special defenses of res judicata and collateral estoppel and in addition, a counterclaim alleging vexatious suit. There was no evidence introduced with respect to these issues and the court will consider such as abandoned.
While the court has no difficulty finding the issues for the plaintiff on the first count, the matter of damages presents some difficulty. It is clear that as a result of the defendant's breach of professional duty, the plaintiff paid $35,000.00 for the purchase of a business which was not transferred to him. In effect, he paid $35,000.00 for which he received nothing by way of assets of the business. He did, however, operate the business for several months, sold ten beds, and as a result derived some income. There was no evidence as to either, amount of such income, or operating expense for such period. Because the business, in his own words, was "dead", he walked away from it. After a conference with the defendant and Ellis, he was offered $15,000.00 and a cancellation of any amounts owed under the $10,000.00 per month CT Page 325 requirement to purchase inventory from the seller and the $3,000.00 per month provision to pay for advertising, neither of which he had paid, and which offer he rejected. This offer, however, was made by Ellis, not the defendant. Under the rule of Somma v. Gracey, 15 Conn. App. 371, 377, 78, an issue of comparative negligence might have been available to the defendant. There is, however, no such special defense in this case.
The fact that damages may be difficult of ascertainment does not prevent their recovery. Bach v. Giordano, 144c, 183; Humphrys v. Beach, 14a C. 14. What the plaintiff might have done had there been proper representation so that he was able to acquire the ownership of the business in question, is conjectural. Simply put, he gave $35,000.00 to the defendant which was turned over to Ellis and he received nothing in return.
The court finds that because of the defendant's breach of professional duty, the plaintiff has suffered the loss of $35,000.00.
Judgment may enter in favor of the plaintiff to recover the amount of $35,000.00 damages with costs.
BELINKIE STATE TRIAL REFEREE