[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In a complaint dated January 4, 1992, the plaintiffs (the Sedottos) allege that the defendant (Attorney Hecht) failed to provide competent, professional legal services in (1) by advising them that they were the owners of certain real estate in Bethel, Connecticut, and had the right of possession; (2) breached his fiduciary duty to them and was negligent; (3) his wrongful conduct caused them emotional distress and trauma. And because of his negligence, they incurred substantial damages.
Some of the background facts are not in dispute and others were stipulated to by the parties. The defendant had practiced law over the past fourteen years in Danbury, Connecticut, and had represented hundreds of clients on the sale and purchase of real estate. In August, 1992, the Sedottos retained him to represent them relative to the purchase of certain real estate known as 9 Old Town Lane in Bethel, Connecticut, from Hi-Tech Builders, Inc. for $110,000, and for Valley View Construction, Inc. to custom build a single family dwelling for them on this lot for $165,000. The contracts were prepared for the sellers CT Page 4019 by Karin Nejame, Esq., an attorney who also practiced law in Danbury. The defendant agreed to provide, in a professional and competent manner, legal services to include reviewing the contracts, obtaining the title abstract and title insurance, assist them in securing a $239,000 mortgage to buy the land and build a dwelling thereon, attend the closing, and review and record the warranty deed to give them good and marketable title. In August of 1992, the Sedottos met with Attorney Hecht on a number of occasions and certain amendments were agreed to by the attorneys and incorporated into the contracts. The sellers and builder, Gary Bricker and his wife Sharon Bricker, operated this construction business out of two corporations, Hi-Tech Builders, Inc. and Valley View Construction, in which they owned all the stock and were the officers in both of them. The dwelling was to be completed in late November, 1992, and the closings on the land and the $239,600 mortgage from the Sedottos to First Federal Savings Loan were scheduled for November 24, 1992 at the bank in Stamford, Connecticut. The attorney for the sellers, Karin Nejame, Esq., did not attend the closing in Stamford, and delivered a warranty deed to Attorney Hecht from Hi-Tech Builders, Inc. to the Sedottos and a waiver of mechanics lien from the builder, Valley View Construction, dated November 1, 1992. The defendant conceded that this deed did not convey good and marketable title to the Sedottos because title was in the name of Sharon Bricker and not in Hi-Tech Builders, Inc. A second closing took place in Stamford on November 30, 1992 to complete the $239,600 loan mortgage. Since the house was still incomplete, the bank would only advance $167,720, and held back the third and fourth advances ($47,920 and $23,960) for a total of $71,880. At the closing of November 30, Mr. Richard Sedotto authorized the bank to send all future advances to Attorney Hecht as trustee with instructions to deliver the third advance of 20 percent ($47,920) to the builder and to hold back the final 10 percent advance ($23,960). Shortly after this closing, the Sedottos were married and were away on their honeymoon from December 3 to December 14, 1992. On December 17, 1992, Mr. Sedotto called Attorney Hecht to discuss whether they could move into the house. The parties disagreed on what Attorney Hecht advised Mr. Sedotto. Attorney Hecht testified he told him not to move into the house because the certificate of occupancy had not been issued by the Bethel Building Inspector and that by moving in he would be in violation of the construction contract. Mr. Sedotto testified the defendant told him, "It's your house. Do what you want." At that time, both of them CT Page 4020 erroneously believed that title to the land had been conveyed to the Sedottos by the warranty deed from Hi-Tech Builders, Inc. It was not until February 1, 1993, that anyone knew that title was not transferred to them. The court finds Mr. Sedotto's testimony logical and credible and that he moved into the house relying on the defendant's advice in that he had paid for the land and had authorized the defendant to disburse the balance of the bank loan in payment of the house.
On December 19, 1992, the Brickers blocked the driveway and called the Bethel Police to arrest the plaintiffs for trespassing and to remove them from the property. They were unable to reach Attorney Hecht at that time and were advised to call Daniel O'Grady, a Bethel attorney, for his advice. With his assistance, the Bethel Building Inspector granted them a certificate of occupancy on December 21 with conditions that certain work was to be completed.
As a result of taking possession, there were a total of seven lawsuits brought by Sharon Bricker, Valley View Construction, Richard Sedotto, et al., in the Danbury Superior Court in which the Sedottos incurred substantial legal costs and damages. The court finds the defendant was negligent by accepting a deed from Hi-Tech Builders, Inc. which did not have title to the property. This negligence was the proximate cause of the damages sustained by the Sedottos and was directly related to the seven lawsuits returned to the Danbury Superior Court. The defendant's negligence was a substantial factor in the damages and additional legal costs sustained by the plaintiffs.
The essential elements in a negligence malpractice cause of action are well established in Connecticut: duty, breach of that duty, causation and damages. Catz v. Rubenstein,201 Conn. 39, 44 (1986).
"In a legal malpractice action, the plaintiff must produce expert testimony (1) that a breach of the professional standard of care has occurred, and (2) that the breach was the proximate cause of the injuries suffered by the plaintiff."Somma v. Gracey, 15 Conn. App. 371, 374-75 (1988).
The Connecticut Supreme Court recently reaffirmed these elements in First Federal Savings Loan of Rochester v.Charter Appraisal Co., 247 Conn. 597, Connecticut Law Journal, CT Page 4021 February 2, 1999, relative to our law applicable to professional malpractice, negligence, proximate cause, and the measure of damages a plaintiff is entitled to recover.
A "tortfeasor is liable" for all damages proximately caused by his or her negligence. Neiditz v. Morton S. Five Associates. Inc., 199 Conn. 683, 689 (1986). The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendants negligent conduct. Doe v. Manheimer, 212 Conn. 748,758 (1989).
In Mahoney v. Beatman, 110 Conn. 184, 195 (1929) has defined the general rule as follows: "`Defendant's tort must have been a substantial factor producing the damage complained of.' or stated in another form "To constitute such causal relation between defendants tort and plaintiffs damage as will suffice to maintain an action of tort, the defendants tort must have been a substantial factor in producing the damage complained of."
As stated in a footnote in First Federal Savings LoanAssociation of Rochester v. Charter Appraisal Co., supra,247 Conn. 604 n. 7, "As Professors William L. Prosser and W. Page Keeton have stated: `It is quite possible to state every question which arises in connection with proximate cause' in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur?"
The defendant, in this case, acknowledged his duty to represent the Sedottos with the skill and knowledge and with a reasonable standard of care as required by an attorney experienced in handling real estate transactions in Fairfield County, Connecticut. The defendant conceded and the court finds that he failed to run down the title in the Bethel Land Records so as to know that the correct owner of title to the land was Sharon Bricker. It is a fundamental duty for an attorney practicing in Fairfield County to determine the correct owner of title before accepting a deed for a buyer. His failure to do so was a breach of duty and of his contract with the Sedottos to provide competent professional legal services. The court finds this omission resulted in the plaintiffs sustaining additional legal costs in bringing or defending seven legal actions filed in the Danbury Superior CT Page 4022 Court, and in sustaining substantial damages. The court has taken judicial notice of these seven cases by Sharon Bricker, First Federal and Loan, Valley View Construction Co., Inc., and the Sedottos, and finds them all related to the defendant's failure to obtain good title for the Sedottos. This failure on his part was the proximate cause of the legal costs and damages sustained by them. The court also finds he was negligent in accepting a waiver of mechanic's lien from the builder dated November 1, 1992, when he knew or should have known that about $40,000 in labor and materials went into the dwelling during the month of November. He also failed to determine the amount of work the builder had completed and to coordinate and clarify his clients' obligation between the construction contract schedule and the mortgage loan advances, and in his failure to obtain good title under the land contract. The fact that a correctional deed was eventually received by the Sedottos is immaterial because his negligence was the basis for the legal actions between 1993 and 1996.
The court finds the testimony of the plaintiff's legal expert, Attorney Galen Wells, relevant and credible. She testified that the defendant's acts or failure to act was a substantial factor in the Sedottos incurring additional legal costs and damages. From a review of the two contracts and the mortgage loan commitment, she concluded that an attorney using reasonable care would foresee the conflicts and the problems which later arose. This failure to obtain an updated mechanics lien waiver for the labor and materials furnished from November 1st to the 30th was a foreseeable claim. The additional costs and payments made to the sellers to settle the seller's claim were also foreseeable damages. The plaintiff's measure of damages is to put them in the same financial position had the negligence of the defendant not occurred or to make them whole.
The plaintiffs paid a total of $49,440 in additional legal costs to three attorneys in prosecuting or defending the seven legal actions arising out of this transaction, which were all directly related to the defendants negligence:
1. Daniel O'Grady, Esq. $19,340
2. Slez Slez, Esqs. $21,600
3. Richard McGannon, Esq. $ 8,500 CT Page 4023
The plaintiffs incurred the following miscellaneous costs from bringing or defending these seven lawsuits and to complete the unfinished work on the dwelling:
1. Fee to Attorney Chorches, the Arbitrator $1,300
2. Fee to Attorney Galen Wells (Expert Witness) 2,000
3. Correct defects in dwelling 2,300
4. Soil erosion bond 1,500
5. To complete unfinished work on dwelling 15,000
$22,100
The plaintiffs agreed to pay $165,000 for the dwelling under the contract and owed $71,880 to the builder as of the date of closing. In fact, they paid him $105,000, for a loss of $33,120.
Based on all the testimony and the exhibits in evidence, including the expert testimony of Attorney Galen Wells, the court finds the plaintiffs have sustained their burden of proof by a fair preponderance of the evidence and are entitled to total damages as follows:
1. Legal fees paid $49,440
2. Miscellaneous costs $22,100
3. Loss under construction contract $33,120
TOTAL DAMAGES $104,660
PETRONI, J.