[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE MOTION TO STRIKE BY THE APPORTIONMENT DEFENDANT, ATTORNEY ELLIOTT B. POLLACK, OF THE FIRST COUNT OF THE APPORTIONMENT COMPLAINT
The case-in-chief, a legal malpractice action, was commenced by the plaintiffs, Bonnie B. Gauthier, individually and as Executrix of the Estate of Grace F. Belanger, and Elaine L. Sholes, (collectively the plaintiffs) on or about August 24, 1999. The complaint alleges that Belanger retained the defendants, John F. Kearns, III and the law firm of Kearns Kearns, P.C. (collectively the defendants or apportionment plaintiffs), to protect her assets and permit her to qualify for Medicaid benefits if and when she required long-term care, without depleting her assets, which she intended to give to her daughters. The defendants undertook to represent Belanger for said purpose and, inter alia, transferred her real property to various trusts so that such property would not be considered an asset in determining Medicaid eligibility. It was later discovered, however, that only a portion of her real property had been conveyed, thereby leaving Belanger with assets. Thus, the defendants prepared and filed corrective deeds.
The State Department of Social Services (DSS), however, found Mrs. Belanger "over assets" since the transfer of Belanger's property through the corrective deeds was invalid. On July 28, 1998, the DSS, therefore, denied Belanger's application for Medicaid assistance. On December 4, 1998, Belanger died. In that same month, the DSS held a fair hearing and on March 10, 1999, the hearing officer held that the corrective deeds were invalid and affirmed the decision declaring Belanger ineligible for Medicaid assistance. Subsequently, the defendants filed an administrative appeal from the DSS decision to the Superior Court. The DSS filed a motion to dismiss the appeal on the ground that the court lacked subject matter jurisdiction because the appeal was untimely.
Thereafter, Attorney Elliott B. Pollack, the apportionment defendant, became the counsel of record for the plaintiffs. Pollack filed an appearance in lieu of Attorney Kearns and other counsel for Belanger's estate, notified Attorney Kearns that he planned to commence a malpractice action against him and filed papers in opposition to the DSS's motion to dismiss. On September 30, 1999, McWeeny, J., granted the DSS's motion to dismiss on the ground that the appeal was untimely filed. No appeal was taken from the dismissal of the administrative appeal. CT Page 5964
On or about January 19, 2000, the apportionment plaintiffs filed a two count apportionment complaint.[1] Count one of the apportionment complaint is directed against Pollock and alleges that he was negligent in failing to appeal the court's decision, failing to advise the plaintiffs to appeal and failing to inform the plaintiffs of the grounds for an appeal. Count one also alleges that Pollack's negligence proximately caused the damages or injuries suffered by the plaintiffs.
On March 21, 2000, Pollack filed a motion to strike count one of the apportionment complaint. In the memorandum accompanying the motion to strike, Pollack claims as follows:
1. The issues of legal malpractice can be determined in the case-in-chief. Therefore, the apportionment complaint is moot. Specifically, if the plaintiffs prevail on the case-in-chief, it will show that the defendants committed legal malpractice on the merits, and, therefore, an appeal of Judge McWeeny's decision would have been an exercise in futility. Alternatively, if the defendants prevail on the case-in-chief, it will show that the defendants did not commit malpractice and they would not be liable for damages, thereby precluding recovery from Pollack.
2. Public policy dictates that successor counsel coming into a case to correct the malpractice of prior counsel, may not be made a party to a malpractice action against the defendants in the case-in-chief.
3. An apportionment complaint is permitted under General Statute §52-102b if the tort reform statute, General Statute § 52-572h, applies. Section 52-572h applies to "a negligence action to recover damages resulting from personal injury, wrongful death or damage to property." Section 52-572h does not apply to this case because it is not an action to recover damages resulting from personal injury, wrongful death or damage to property.
4. The apportionment plaintiffs and defendant are not joint tortfeasors and, therefore, § 52-572h is not applicable.
By their memorandum of April 19, 2000, the apportionment plaintiffs oppose the motion to strike. The apportionment plaintiffs contend that:
1. Pollack's argument that the apportionment statute applies only if the parties against whom negligence is alleged are joint tortfeasors is incorrect. In a case involving multiple tortfeasors, damages may be proximately caused by more than one tortfeasor, even when the tortfeasors act independently. Therefore, the parties against whom CT Page 5965 negligence is claimed do not have to be joint tortfeasors.
2. Pollack contributed to the plaintiffs' injury by failing to appeal Judge McWeeny's "erroneous" dismissal of the appeal. The failure to appeal foreclosed the possibility of recovering the Medicaid benefits. Moreover, if the plaintiffs had prevailed on the appeal, they would not have suffered damages.
3. The apportionment complaint is not contrary to public policy.
4. A claim against an attorney for the negligent failure to pursue an appeal is a legally sufficient claim.
5. Somma v. Gracey, 15 Conn. App. 371, 378, 544 A.2d 668 (1988), stands for the proposition that apportionment applies to a legal malpractice action sounding in negligence.
6. Section 52-572h applies to claims for commercial loss, which is the same as property damage.
 STANDARD OF REVIEW
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff" (Internal quotation marks omitted.) Novametrix Medical Systems, Inc. v.BOC Group, Inc., 224 Conn. 210, 214-15, 618 A.2d 25 (1992).
 ISSUES 1. Is Pollack a Joint Tortfeasor?
The applicable statute, § 52-572h, does not specify the words "joint tortfeasors". Section 52-572h (c) provides in pertinent part: "In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property . . . if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share. . . ." In Gionfriddo v. GartenhausCafè, 15 Conn. App. 392, 546 A.2d 284 (1988), aff'd, 211 Conn. 67,557 A.2d 540 (1989), the court articulated that "[j]oint tortfeasors are two or more persons who are liable to the same person for the same harm. It is not necessary that they act in concert or in pursuance of a common design, nor is it necessary that they be joined as defendants." CT Page 5966 (Internal quotation marks omitted.) Id., 398. In Gionfriddo, the court concluded that the purveyor of alcohol and the intoxicated driver were joint tortfeasors. See id. The court noted that "the independent acts of each, namely, the sale of an alcoholic beverage to an already intoxicated person and the voluntary consumption of alcohol to the point of intoxication prior to the operation of a motor vehicle, combine or coalesce to produce the same harm, in this case the death of the decedent." Id.
Further, in Berlepsch v. Peck, Superior Court, judicial district of New Haven at New Haven, Docket No. 423137 (January 25, 2000, Blue, J.), the court explained that "[t]he question that must be addressed under [§] 52-572h (c) is whether the damages are determined to be proximately caused by the negligence of more than one party. The statute does not distinguish between negligence occurring at different times or between different categories of negligence. The focus is on the damages. In a case involving multiple tortfeasors, damages may be proximately caused by more than one tortfeasor, even when the tortfeasors act independently."
An example that this court can point out which involves negligence occurring at different times and involving different categories of negligence is the situation of an automobile accident in which the defendant is liable for the accident and the injuries sustained as a result of the accident. Subsequently, at the hospital the surgeon commits medical malpractice while treating the injuries. Just as inGionfriddo, the operator of the motor vehicle and the surgeon did not act in concert or in pursuance of a common design. Nonetheless, they were joint tortfeasors. Accordingly, this court find that under the facts alleged, Pollack and Kearns are joint tortfeasors.
2. IS § 52-572h APPLICABLE TO THIS CASE?
The apportionment plaintiffs cite Somma v. Gracey, supra,15 Conn. App. 371, in which the court stated that "[i]n situations where the claim of malpractice sounds in negligence; . . . the defense of comparative negligence should be made available. . . . We see no basis for distinguishing between actions for legal malpractice and other claims sounding in negligence." (Citation omitted.) Id., 378. The comparative negligence statute in the present case would be applied to the apportionment plaintiffs and the apportionment defendant. The comparative negligence, if any, was the action or inaction of the apportionment plaintiffs regarding the real estate matter and the alleged failure of Pollack to appeal the superior court's decision.
Section 52-572h applies to negligence actions "to recover damages CT Page 5967 resulting from personal injury, wrongful death or damage to property. . . ." (Emphasis added.) General Statute § 52-572h. There is no question that no personal injury or wrongful death is alleged in the present action. Hence the issue of whether § 52-572h applies to the present action turns on whether the damages alleged constitute property damage.
3. WAS THERE PROPERTY DAMAGE IN THE INSTANT CASE?
The issue before the court is whether the damages from the alleged malpractice constitute property damage. In Williams Ford, Inc. v.Hartford Courant Co., 232 Conn. 559, 657 A.2d 212 (1995), the Connecticut Supreme Court stated "that the reference in§ 52-572h(b) to damage to property does not include purely commercial losses, unaccompanied by damages to or loss of the use of some tangible property." Id., 581. In Williams Ford, the loss involved money, savings that the plaintiffs claim they should have realized. Id., 551. Similarly, in the case at bar, the claimed loss is money that the plaintiffs claim would have been saved if not for the malpractice of the apportionment plaintiffs. In Williams Ford, the court explained that "[w]e approach this question [i.e., whether the phrase damage to property within § 52-572h (b) includes within its meaning purely commercial losses] according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . We also note the rule of statutory construction that statutes in derogation of common law should receive a strict construction and [should not] be extended, modified, repealed or enlarged in its scope by the mechanics of construction." (Citations omitted; internal quotation marks omitted.) Williams Ford, Inc. v.Hartford Courant Co., supra, 232 Conn. 581. "Section 52-572h (b) limits its application to damages resulting from . . . damages to property. Absent from the statutory language, however, is any reference to purely commercial damages." (Citation omitted.) Id., 582. "Reading § 52-572h
(b) in light of its history, we conclude that the legislature intended the phrase damage to property to encompass only its usual and traditional meaning in the law of negligence actions, namely, damage to or the loss of use of tangible property, as opposed to damages for personal injury. When the legislature first enacted § 52-572h, abrogating the absolute bar of contributory negligence in favor of the doctrine of comparative negligence, that statutory abrogation applied CT Page 5968 only to injury to persons or damage to property arising out of the ownership, maintenance or use of a private passenger motor vehicle. . . Public Acts 1972, No. 273, § 6. In 1973, the legislature broadened the comparative negligence doctrine to include negligence claims outside of the automobile no-fault system. The doctrine remained limited, however, to claims alleging injury to persons and damage to property. Public Acts 1973, No. 73-622 § 1. In 1987, the type of damages subject to comparative rather than contributory negligence was expanded to include wrongful death. General Statutes § 52-572h (b); Public Acts 1987, No. 87-227, § 3. Furthermore, the legislative history of § 52-572h is silent regarding the legislative intent behind the use of the phrase damages to property. We can find no justification in that history, therefore, for reading that phrase in other than its traditional sense of physical damage to tangible property. As a matter of statutory interpretation, therefore, we simply cannot stretch the meaning of damage to property, as used in § 52-572h (b), to include commercial losses unaccompanied by physical damage to or loss of use of tangible property. In light of this legislative language and history, therefore, we conclude that the term damage to property, as used in § 52-572h, does not include purely commercial losses." (Internal quotation marks omitted.) Id., 583-84.
Accordingly, this court concludes that the loss suffered by the plaintiffs, namely the loss of medicaid assistance, does not fall under the category or definition of damaged property as set forth in §52-572h. The court, therefore, finds that § 52-572h does not apply to the apportionment defendant because no property damage was suffered by the plaintiffs.
4. IS THE APPORTIONMENT COMPLAINT MOOT?
Pollack claims that the issue of legal malpractice can be determined in the case-in-chief. Therefore, the apportionment complaint is moot. Specifically, Pollack avers that if the plaintiffs prevail on the case-in-chief, it will prove that the defendants committed legal malpractice, and, therefore, an appeal of Judge McWeeny's decision would have been an exercise in futility. Alternatively, Pollack asserts that if the defendants prevail on the case-in-chief, that would show that the defendants did not commit legal malpractice and, therefore, they would not be liable for damages. Thus, there would be no liability and, therefore, no claim for apportionment from Pollack.
The court finds this argument persuasive. According, this court finds that there is no dispositive issue to be decided by the apportionment complaint as to Pollack, and, therefore, it is moot and is stricken.[2]
CT Page 5969
5. DOES PUBLIC POLICY DICTATE THAT SUCCESSOR COUNSEL COMING INTO ACASE TO CORRECT THE MALPRACTICE OF PRIOR COUNSEL MAY NOT BE MADE A PARTYTO THE MALPRACTICE CLAIM AGAINST THE DEFENDANTS IN THE CASE IN CHIEF?
There is no specific public policy set forth in Connecticut, under statutory or common law, as to whether successor counsel in a legal malpractice action can be sued for apportionment. The public policy of California, however, is that successor counsel coming into a case to correct the malpractice of prior counsel may not be made a party to a malpractice action by the defendant against the successor counsel. California's public policy is based upon the following:
1. An attorney must maintain undivided loyalty and independent judgment for a client as is also true in Connecticut under Krawczyk v.Stingle, 208 Conn. 239, 246, 543 A.2d 733 (1988). Thus, the possibility of an apportionment complaint against Pollack would have a chilling effect upon the lawyer/client relationship. Pollack was faced with a decision regarding whether or not to appeal Judge McWeeny's ruling. Pollack decided not to appeal because he thought the appeal lacked merit. If Pollack had to be concerned about a potential malpractice claim against him by the apportionment plaintiffs for not taking an appeal, he would be faced with a conflict between the interest of his client regarding the appeal and his own interest in not being sued for malpractice. Thus, in order to protect himself from any potential malpractice claim, Pollack would have to take the appeal. Such a conflict would destroy the attorney-client privilege, which privilege is almost sacrosanct in Connecticut. This was the reason for the public policy in California as set forth by the California court in Gibson,Dunn Crutcher v. Superior Court, 156 Cal.Rptr. 326 (Cal.App. 1979). InHolland v. Thatcher, 245 Cal.Rptr. 247, 250-51 (Cal.App. 1988), the court stated that "[w]e must decide whether the same general principles [California common-law proportionate responsibility] apply where an attorney sued for malpractice by a former client cross-complains for indemnity against the successor attorney hired to assist the client in limiting the injury caused by the original attorney. We do not act in a vacuum. The problem is a recurring one. The clear weight of judicial authority prohibits the first attorney from cross claiming for indemnity against the successor attorney." The court added "[w]e can envision situations in which the problems presented by a potential cross complaint from the former attorney might make it hard for the client to find a competent replacement." Id. The court also pointed out that successor counsel could not defend the claim for malpractice against him absent a waiver from the client of the attorney-client privilege. See id. The court further stated: "The attorney-client relationship is uniquely susceptible to interference in this regard. Because of the nature of the attorney function, the attorney is the only professional CT Page 5970 who has a duty to advise a client that a malpractice action against another professional may provide a solution to the client's difficulties. . . . If such a malpractice action could generate a cross-complaint against the attorney who urged that course, it can easily detract from the attorney's duty to selflessly and energetically serve the client's interest." (Citation omitted.) Id., 253.
The highest court in Minnesota concurs with California. In MelroseFloor Co., Inc., v. Lechner, 435 N.W.2d 90 (Minn.App. 1989), the court noted that it had previously held in Eustis v. The David Agency Inc.,417 N.W.2d 295 (Minn.App. 1987), that public policy prohibits third party actions against successor counsel. The court explained that
 "[i]n Eustis, the plaintiff sued an insurance agency seeking equitable recission of a settlement agreement based on alleged fraud in concealing and failing to disclose policy coverage. The insurance company in a third-party complaint joined the lawyer representing the plaintiff during the settlement negotiations, alleging that the lawyer acted negligently and asserting a claim of damages for contribution and/or indemnity from him. We affirmed the trial court's summary judgment for the lawyer, deciding that a contribution claim cannot be asserted against the plaintiff's lawyer." Melrose Floor Co., Inc., v. Lechner, supra, 435 N.W.2d 91. The reasoning of Eustis, which the Court held applicable to the appeal before it involving a lawyer bringing a third party action against successor counsel, was described as follows: "It is evident that the court made its decision in Eustis based on the public policy that permits a lawyer to make decisions for a client without concern for personal liability in contribution claims to persons the client sues. . . . In addition, the court recited the rule of law that the lawyer who provides services to a client is not liable to a third party unless the lawyer acts with fraud, malice, or has otherwise committed an intentional tort. . . . Finally, the Eustis result resolves the problem that a lawyer joined as a third-party defendant is precluded from making disclosure of privileged information which the plaintiff has communicated with reliance on the client-attorney privilege. . . . The privilege may be waived by the plaintiff's choice to sue the lawyer, but it has not been waived by the choice to sue CT Page 5971 another." (Citations omitted.) Id., 91-92.
In the case at bar, Attorney Pollack would have to ask the client, in this case the plaintiffs, to waive the attorney-client privilege so that Pollack could disclose the content of his conversations with his clients as to whether he recommended not taking an appeal, why he recommended that action and his clients' responses to his recommendations.
The apportionment plaintiffs presented cases from New York and Illinois. Suffice it to say that this court finds the California and Minnesota cases and the principle espoused therein more persuasive than the cases from New York and Illinois.
The court, therefore, finds that it violates public policy in Connecticut to permit successor counsel, Pollack, entering a case to correct the alleged malpractice of prior counsel to be made a party to a malpractice action by the defendants in a malpractice action against them.
For the foregoing reasons, Pollack's motion to strike count one of the apportionment complaint is granted.
Rittenband, J.