**In re SENIOR COTTAGES OF AMERICA, LLC, Debtor.**

**Timothy D. Moratzka, Trustee of the Bankruptcy Estate of Senior Cottages of America, LLC and Senior Cottage Management, LLC, Plaintiff,**

v.

**Richard Morris, Morris, Carlson, Hoelsher, P.A., and Michael Cohen, Defendants.**

**Bankruptcy No. 00–32012.
Adversary No. 03–3132.**

United States Bankruptcy Court, D. Minnesota.

Jan. 13, 2009.

Charles B. Faegre, Minneapolis, MN, Robert C. Black, Black Law Office, Edina, MN, for Debtor.

## ORDER ON PLAINTIFF'S MOTION RE: USE OF DEPOSITIONS TAKEN IN OTHER ACTIONS

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court for hearing on July 28, 2008, on the Plaintiff's motion for certain relief in connection with his proposed use at trial of the record of depositions taken in other lawsuits. The Plaintiff appeared by his attorney, Shane H. Anderson. Defendants Richard Morris and Morris, Carlson & Hoelsher, P.A. ("the Morris Defendants") appeared by their attorney, Charles E. Lundberg. Upon the moving and responsive documents and counsel's argument, the motion is denied.

The Debtor, Senior Cottages of America, LLC, filed a voluntary petition for relief under Chapter 11 on May 2, 2000. The case was converted to one under Chapter 7 on July 18, 2000.

The Plaintiff is the trustee of the Debtor's bankruptcy estate. In 2003, he commenced this adversary proceeding against two individual lawyers and a law firm, seeking recovery of damages against them. In 1998, the Defendants had represented and advised the Debtor and Murray Klane, the Debtor's manager and major shareholder. The Plaintiff claims that during the course of their representation and counsel of the Debtor the Defendants had breached a duty of due care, committed negligence, and aided and abetted Klane in breaching his fiduciary duty to the Debtor.

On motion of the Morris Defendants, this Court dismissed the Plaintiff's claims against them, as they were pleaded under a prior version of his complaint. *In re Senior Cottages of America, LLC,* 320 B.R. 895 (Bankr.D.Minn.2005). Ultimately, the Eighth Circuit Court of Appeals reversed and remanded. 482 F.3d 997 (8th Cir. 2007). Thus, this matter has been in active litigation again.

The backdrop relevant to the Plaintiff's motion follows. In August or September, 1998, the Debtor transferred all of its assets to Millennium Properties, LLC. (The Plaintiff identifies this as the transaction for which the Morris Defendants allegedly advised and represented transferee, transferor, and their common individual principal alike, and that caused the injury and

harm to the Debtor on which he bases his claims in this adversary proceeding.)[1] In the wake of that transfer, litigation was commenced in the Hennepin County, Minnesota District Court by DKM II, Inc. ("DKM"), the Debtor's minority shareholder, and individuals related to DKM. The defendants in that lawsuit were the Debtor, Millennium Properties, Klane, and others. On April 12, 2000, the Hennepin County District Court held that the transfer had been fraudulent under the Minnesota Fraudulent Transfers Act. Judgment to that effect was entered there.[2]

Over the following weeks, Klane, the Debtor, Millennium Properties, and several related entities filed for Chapter 11. DKM commenced an adversary proceeding against Klane in his individual bankruptcy case ("the Klane adversary proceeding"). In that proceeding, DKM received a judgment excepting Klane's debt to it from discharge in bankruptcy.

During the litigation of the Hennepin County lawsuit and the Klane adversary proceeding, parties took depositions of witnesses. Parties and attorneys other than those strictly of record in the Klane adversary proceeding attended at least some of the depositions in that lawsuit. Apparently the thought was to allow the development of points of fact beyond those relevant to DKM's dischargeability complaint, with an eye toward the possible use of the fruits in other proceedings in Klane's case.

The Plaintiff believes that the testimony of several of the witnesses deposed in those other lawsuits is relevant to his causes of action in this adversary proceeding. He wishes to make it part of his case

in chief here. He proposes to use the transcripts of six prior depositions of those witnesses when this adversary proceeding comes to trial, in lieu of in-court testimony from them. Via the present motion, he seeks an adjudication that he is not barred from proffering the deposition transcripts as evidence merely because they were the product of the litigation of other lawsuits.[3]

Were he to proffer the deposition transcripts as evidence at trial, the Plaintiff first would have to invoke the general authority of FED.R.CIV.P. 32(a)(1), *as incorporated* by FED. R. BANKR.P. 7032:

(a) Using Depositions.

(1) *In General.* At a hearing or trial, all or part of a deposition may be used against a party on these conditions:

(A) the party was present or represented at the taking of the deposition or had reasonable notice of it;

(B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

(C) the use is allowed by Rule 32(a)(2) through (8).

For the purposes of analysis under this rule, the six depositions in question may be separated into three groups. The most extensive analysis will be made for the first group.

I. *The Depositions of Roger Peterson; Michael Cohen, Esq.; and Murray Klane, in the Hennepin County Lawsuit*

As to these depositions, the Plaintiff maintains that the requirement of Rule

---

1. Neither the Defendants here, nor any of the parties to the transaction, have ever denied as a matter of fact that the transaction took place.

2. For brevity, this action will be termed "the Hennepin County lawsuit."

3. At present, the Plaintiff does not seek any rulings as to the admissibility of the content of any of these transcripts.

32(a)(1)(A) is met because Richard Carlson, Esq., a member-attorney of Defendant Morris, Carlson & Hoelscher, P.A., participated in the taking of the depositions as counsel for the Debtor.[4]

Then, to meet the requirement of Rule 32(a)(1)(C), he invokes Rule 32(a)(8):

(a) Using Depositions.

. . .

(8) *Deposition Taken in an Earlier Action.* A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

Going to this provision, the Plaintiff insists that the Hennepin County lawsuit and the Klane adversary proceeding both had "the same subject matter" as this adversary proceeding. He identifies that "subject matter" as the transfers effected by Klane that "completely stripped [the] Debtor of its assets." He proposes the same affiliation of Carlson, as counsel to the Debtor at that time, to meet the other identity requirement of Rule 32(a)(8)—i.e., Carlson was the "representative" of the Morris Defendants as well as the Debtor when he participated in the depositions.

■ The Plaintiff is wrong, as to both of these points. The Morris Defendants were neither plaintiffs nor defendants in the Hennepin County lawsuit; thus, they could not possibly have been "present" in the status of parties-participant at the depositions. And the Morris Defendants' argument against attributing a "representative" status for them is spot-on.

Carlson did not formally note an appearance as counsel for either Morris or Morris, Carlson & Hoelscher, P.A. in their own right, for the purposes of the depositions. He cannot be deemed in retrospect to have been simultaneously representing his client-of-record at the time, and representing the interests of his own law firm and its members as they might be implicated in the future by their past representation of that client. In the abstract and the concrete alike, such an attribution would compromise the allegiance of an attorney to her client; it would always leave open a possibility that in the future the attorney's "own self-protective interests," *Eustis v. David Agency, Inc.*, 417 N.W.2d 295, 298 (Minn.Ct.App.1987), would be called up to impugn the integrity of the attorney's performance of professional services to the client. This would create a powerful distraction from the attorney's performance for her client. More generally, it could have a chilling effect on the strength of advocacy.

The courts must avoid constructions of statute or rule that could lead to any of this. *Eustis*, 417 N.W.2d at 298–299. And given the fact that no claim against the Morris Defendants had even been broached at that point, it cannot be said that Carlson's participation in the deposition as counsel for the Debtor "was calculated to induce as thorough a cross-examination as the interest of" the Morris Defendants would have required, or as broad an interrogation. *See Rule v. Int'l Ass'n of Bridge, et al., Workers*, 568 F.2d 558, 569 (8th Cir.1977).

■ The Plaintiff does not meet the other identity-requirement of Rule 32(a)(8),

---

4. Carlson may have appeared for other defendants at the depositions as well; the record for this motion is not broad enough to speak to that.

either. The issues in suit in the Hennepin County lawsuit were whether *Klane* brought about a fraudulent transfer of the Debtor's assets, to the detriment of the plaintiffs suing there. Yes, the effectuation of a fraudulent transfer, in some sense, is a predicate for the Plaintiff's claims in this adversary proceeding. However, the Plaintiff is not suing the Morris Defendants on an allegation that *they* performed it, or were the beneficiaries of it, and hence are directly liable to the estate. Rather he alleges a dereliction that is one step removed: advising and counseling Klane on whether and how to do it. As the Plaintiff would have it, the fundamental wrongness of the Morris Defendants' conduct is that they, as legal professionals, should have known better—that the "strip[ping] [of the] Debtor of its assets" would not be legally permissible or sustainable, would be outside the scope of Klane's fiduciary duties as the Debtor's controlling principal, and would cause damage to their client, the Debtor. In his deposition of Cohen, DKM's counsel went so far as to instruct the witness *not* to testify as to the content of the advice given by Morris—a clear indication that the nature of the attorneys' participation in the events leading to the transfer was irrelevant to the issues in suit there.[5]

At most, there is a small overlap of the most basic "platform" *facts* between the claims addressed in the Hennepin County lawsuit and those in this adversary proceeding. Those common facts are solely transactional in nature. There is no "substantial identity" of *issues,* which is required to meet the "same subject matter" requirement of Rule 32(a)(8). *Rule v. Int'l Ass'n of Bridge, et al., Workers,* 568 F.2d at 568–569. Without that, one cannot presume that any party to the depositions had any motive for flushing out a full range of testimony from the deponents that would go to the very different claims in suit here.[6]

Because the Plaintiff cannot satisfy either Rule 32(a)(1)(A) or Rule 32(a)(1)(C) as to the three depositions taken in the Hennepin County lawsuit, he will have no basis for proffering their content for evidentiary purposes at the trial of this adversary proceeding.

## II. The Depositions of Murray Klane and Martin Garden in the Klane Adversary Proceeding

■ As for these two depositions, the Plaintiff has not even met the "presence" requirement of Rule 32(a)(1)(A). The Klane adversary proceeding was a dischargeability matter that ran purely between a private-party creditor of Klane and Klane as an individual. Neither of the Morris Defendants represented Klane in his individual capacity, for the defense of it. Other than DKM's counsel, the persons present at Klane's deposition were Klane; his defense counsel (Michael J. Iannacone, Esq.); Patrick C. Summers,

---

5. Those issues, of course, were whether a fraudulent transfer had actually taken place, and the legal consequences of that.

6. The Plaintiff's heavy reliance on *Fullerform Continuous Pipe Corp. v. American Pipe & Constr. Co.,* 44 F.R.D. 453, 455–456 (D.Ariz. 1968) is inapposite, regardless of the fact that in *Rule* the Eighth Circuit cited *Fullerform* for a general proposition. The *Fullerform* court found a "substantial identity of issues" in twin allegations of a more generalized conspiracy to inhibit the introduction into the marketplace of methods of producing a type of product, "cast-in-place pipe," even though the two lawsuits involved different physical processes of production and there was only a partial overlap of defendants between the two actions. There is no way that the nature of the claims in suit between the Hennepin County lawsuit and this matter can be stretched into any true commonality of issues, no matter how slight.

counsel for the Plaintiff in his contemporaneous status as trustee in Klane's case; and Martin Garden, Esq. Those same persons were present at the deposition of Martin Garden, plus Scott Strouts, Esq., counsel for Garden.[7]

The Morris Defendants had no opportunity at all to cross-examine or otherwise structure the content of the inquiry of either deponent during these depositions. Thus, there is no basis for the Plaintiff to even invoke Rule 32(a)(1) in the first instance.[8]

### III. The Deposition of Richard Morris in the Klane Adversary Proceeding

■ The requirements of Rule 32(a) are hospitable to the Plaintiff's motion as to this deposition, however. Obviously, Morris was "present," as a deponent and in his individual capacity. As such, he had the full opportunity to have counsel appear on his behalf.[9] Morris is both a party to this adversary proceeding and a principal of his law firm, the other Morris Defendant. The latter meets the requirement of Rule 32(a)(1)(C) via Rule 32(a)(3).[10] Thus, the Plaintiff may offer appropriate portions of

the transcript of this deposition at trial, and if admissible they may be received.[11]

### IT IS THEREFORE ORDERED:

1. When this adversary proceeding comes to trial, the Plaintiff may proffer the content of the transcript of the deposition of Defendant Richard Morris that was taken in ADV 00–3210 as evidence, pursuant to FED. R. CIV. P. 32(a)(1). All issues as to the admissibility of such content are reserved for trial.

2. When this matter comes to trial, the Plaintiff will not have a basis under FED. R.CIV.P. 32(a)(1) to proffer any of the content of the transcripts of any of the other depositions identified in his motion.

---

7. The enumeration of parties present at these depositions is taken from the Plaintiff's brief. The record has nothing from the depositions themselves to corroborate the enumeration. However, the Plaintiff had significant motivation to make the enumeration accurate and all-inclusive, given the law's emphasis on the "presence" requirement.

8. Garden's subsequent death would have been a basis to meet Rule 32(a)(1)(C) via Rule 32(a)(4)(A). However, the present ruling renders superfluous the attention that the Plaintiff gave to this point in this motion.

9. And, of course, Morris had been fully able to evaluate the advisability of doing that from an informed perspective, as an attorney engaged in practice for several decades.

10. It is not clear from the record which of the specific statuses identified by Rule 32(a)(3) Morris held in his law firm, then or now, i.e., officer, director, or managing agent. But, the

Morris Defendants have tacitly admitted that he held at least one of them. Counsel acknowledged at n. 1 of his clients' brief that the content of Morris's deposition is "testimony by an adverse party which might arguably be used at trial under Rule 32(a)(3) . . ."

11. In briefing and argument, the Morris Defendants' counsel made quite a hubbub about how the Court could make no ruling as to the receipt of the entire transcript, at this time, "because it may contain evidence that is irrelevant, cumulative, unduly prejudicial, or otherwise inadmissible." That pretty much goes without saying. Rule 32(a)(1)(B) limits the use of deposition-generated testimony at trial "to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying." This contemplates a proffer of the content on a section-by-section basis, or even answer-by-answer.